FILED

Oct 30 2018, 6:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Jonathan G. Chance
JC Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William D. Bradley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 30, 2018

Court of Appeals Case No.
87A01-1711-CR-2584

Appeal from the Warrick Superior
Court

The Honorable Robert R.
Aylsworth, Judge

Trial Court Cause No.
87D02-1505-F1-167

**Najam, Judge.**

## Statement of the Case

[1]     William D. Bradley appeals his convictions for two counts of child molesting,

each as a Level 1 felony; one count of child molesting, as a Level 4 felony; and

one count of incest, as a Level 4 felony. Bradley raises the following five issues for our review:

> 1.      Whether the trial court violated Bradley's rights to a speedy trial under either Indiana Criminal Rule 4(C) or the federal and state constitutions.

> 2.      Whether Bradley's convictions for child molesting, as a Level 4 felony, and incest were based on the very same acts on which his two Level 1 child molesting convictions were based and, as such, violated his right to be free from double jeopardy.

> 3.      Whether the trial court abused its discretion in the admission of certain evidence.

> 4.      Whether the State presented sufficient evidence to support his convictions.

> 5.      Whether the trial court committed fundamental error when it did not intervene during the prosecutor's closing argument.

[2]     We affirm in part, reverse in part, and remand with instructions to vacate Bradley's convictions for child molesting, as a Level 4 felony, and incest, as a Level 4 felony.

## Facts and Procedural History

[3]     On March 30, 2015, A.S. invited her brother, D.B., and her father, Bradley, to her house to watch movies with her and her three minor children, E.S., T.S. and K.S. At the time, her daughter, T.S., was six years old. After dinner that

evening, A.S. went to bed around 9:00 p.m., and D.B. and Bradley stayed up with E.S. and T.S.

[4] Around 10:50 p.m., D.B. left the living room, where he and the others were still watching movies, to go to the bathroom. When he returned to the living room about fifteen minutes later, he observed T.S. on Bradley's lap, under a blanket. D.B. observed Bradley "holding [T.S.] under" the blanket. Tr. Vol. I at 211. Bradley's hands were also underneath the blanket. T.S. appeared to be "struggling," and D.B. heard her say "no." *Id.* at 213. D.B. looked for a phone to call police, but he could not locate one, and when he returned to the living room T.S. was no longer on Bradley's lap but, rather, on the couch. When Bradley later left the residence, D.B. heard Bradley whisper to T.S. "shh" and "it was just all a dream." *Id.* at 217.

[5] The next afternoon, when A.S. came home from a dentist appointment, D.B. and T.S. were inside the residence, and D.B. urged T.S. to "tell" A.S. about the night before. *Id.* at 134. But T.S. did not want to discuss it. D.B. then told A.S., outside of T.S.'s presence, what he had observed with Bradley the night before. A.S. then asked T.S. about it, and T.S. "confirmed what [D.B.] had said." *Id.* at 135.

[6] Thereafter, A.S. called police, and Molly Elfreich, a forensic interviewer at the Holly House adult and child advocacy center, interviewed T.S. During that interview, T.S. identified the female genital area and the male genital area using diagrams of a female body and a male body. T.S. then stated that Bradley had

touched her breasts; that he had touched her genitals over her clothes with his hand; that he had placed a finger inside her vagina; and that he had made "her face touch[] his penis." *Id.* at 194. When asked if Bradley had made any specific parts of her face touch his penis, T.S. stated that he had made "all of" her face touch it. State's Ex. 1 at 16:21.

[7] On May 1, the State charged Bradley with Count 1: child molesting, as a Level 1 felony; Count 2: child molesting, as Level 1 felony; Count 3: child molesting, as a Level 4 felony; and Count 4: incest, as a Level 4 felony. After various continuances, on September 1, 2016, Bradley moved for discharge pursuant to Indiana Criminal Rule 4(C). The trial court denied his motion. At his ensuing jury trial, during cross-examination, A.S. testified that she did not take T.S. to a hospital or emergency room immediately after she had learned of Bradley's acts because A.S. believed that "[n]othing was inserted . . . that would have passed an STD." Tr. Vol. I at 26-27. The jury returned a hung verdict, and the court declared a mistrial.

[8] Prior to the second trial, Bradley filed a renewed motion for discharge pursuant to Criminal Rule 4(C), which the court again denied. Also prior to the second trial, the State filed a motion in limine to prohibit Bradley from asking A.S. whether anything had been inserted into T.S. because A.S. lacked personal knowledge of such an act. The trial court granted the State's motion.

[9] The court held Bradley's second trial in September of 2017. At that trial, A.S., D.B., and Elfreich testified, and the State introduced T.S.'s recorded interview

with Elfreich as well as a video-recording of police officers' interview with Bradley, which was conducted shortly after the initial allegations had been made. During her testimony, A.S. stated that she did not take T.S. to a hospital immediately after learning of the allegations because of the stress of the moment and also because they "were a tight-knit family" and she "would have known" if Bradley had an STD that he could have passed to T.S. *Id.* at 148-49. Bradley then moved to impeach A.S. using her testimony from the first trial. The trial court denied Bradley's request and noted that A.S.'s second testimony was made while "she was trying very hard not to violate" the court's order on the motion in limine. *Id.* at 152.

[10] Following the presentation of evidence, the prosecutor stated as follows, without objection, during closing argument:

> [The court's instruction] defines other sexual conduct. It is an act involving the sex organ of one person and the mouth or anus of another person, or it's the penetration of a sex organ or anus of a person by any object.
>
> In this case we have both. Count [1] involves oral sex, and Count [2] involves digital penetration. So what the State would have to prove would be a mouth of [one] person coming into contact with a sex organ or an object, which can be a finger, penetrating a sex organ of another person.
>
> * * *
>
> In Count [1] the State has to prove the defendant . . . [p]erformed or submitted to oral sex. And, again, the definition I just read to

you is the mouth in contact with the sex organ. So the State doesn't have to prove beyond a reasonable doubt that his penis went into her mouth and stayed for any period of time. Her testimony was that her face, all of the parts, came into contact with his parts. That satisfies the element.

. . . In Count [2,] the State has to prove the defendant . . . knowingly performed digital penetration. Digital penetration is what it sounds like. That is, his finger went into her vagina. . . .

In Count [3], that's a fondling count. . . . [A]ll the State has to prove is the defendant . . . did it with the intent to arouse or satisfy either [T.S.'s] sexual desires—and that's what the statute says and there's no evidence that [T.S.] had any sexual desires here—or his own sexual desires . . . .

Then Count [4]—if you find guilt in Count [1] or Count [2], Count [4] should be a slam dunk . . . .

* * *

Think about Mr. Bradley in [the police interrogation] video. "Did you put your penis in her anus?" "No." "Did you put your penis in her vagina?" "No." "Did you rub up on her a little bit?" There's a theory in logic called Ockham's razor. All right? Which is the simplest explanation is probably the right one. The simplest explanation is that Mr. Bradley didn't put his penis in her vagina. He didn't put his penis in her anus, but he's got a guilty look on his face because he's guilty.

Now's our chance to hold him accountable. In the end the jury doesn't decide what should happen; the judge does. He has . . . a wide range of choices, but he can't do anything until [twelve]

people decide to hold him accountable and hold him guilty. Thank you.

Tr. Vol. II. at 31-34, 37. Following closing arguments, the jury found Bradley guilty as charged. The court then entered its judgment of conviction on all counts and sentenced Bradley to an aggregate term of thirty years. This appeal ensued.

## Discussion and Decision

### *Issue One: Speedy Trial*

#### Criminal Rule 4(C)

On appeal, Bradley first asserts that the trial court erred when it denied his motions for discharge under Indiana Criminal Rule 4(C). That Rule states:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar . . . . Any defendant so held shall, on motion, be discharged.

Ind. Criminal Rule 4(C).

Because Bradley preserved his Rule 4(C) motion for discharge prior to the start of his first trial, our first question in this appeal is whether the trial court erred when it denied that motion. *Cf. Faulisi v. State*, 602 N.E.2d 1032, 1039 (Ind. Ct.

App. 1992) (noting that the defendant's "first trial . . . was within the one year mandate of" Rule 4(C) before proceeding to a constitutional analysis of the interstice between the mistrial and the retrial), *trans. denied*;[1] *Driver v. State*, 594 N.E.2d 488, 491-92 (Ind. Ct. App. 1992) (same), *trans. denied*. In reviewing Criminal Rule 4 claims, we review questions of law *de novo*, and we review factual findings under the clearly erroneous standard. *Austin v. State*, 997 N.E.2d 1027, 1039-40 (Ind. 2013). Here, the facts are undisputed, and therefore our review is *de novo*. *Id.*

[13] The parties agree that the one-year period began to run on May 4, 2015, when officers arrested Bradley. Thus, the trial court initially had until May 3, 2016, to hold Bradley's trial under Rule 4(C) unless valid circumstances existed to delay that date. On July 24, 2015, the trial court, with Bradley's agreement, set the trial date for February 1, 2016, which was well within that initial one-year period.

[14] On January 8, 2016, Bradley moved to vacate the February 1 trial date due to a medical condition with his attorney, and, due to that circumstance, Bradley later requested a new trial date of May 9, 2016, which request the court granted. "[W]hen a defendant asks for a continuance, the time between the motion for a continuance and the new trial date is chargeable to the defendant." *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999). Accordingly, the Rule 4(C) period

---

[1] In *Faulisi*, there is a misstated reference to "March 1990" when the facts from the opinion make clear that the reference should have been to "March 5, 1991." 602 N.E.2d at 1039-40.

here was extended by the 122 days between January 8, 2016, and May 9, 2016. Adding those days to the initial May 3, 2016, requirement gave the trial court until September 2, 2016, to hold Bradley's trial.

[15] On April 15, 2016, the State moved to continue the May 9 trial date "due to the unavailability of an essential witness." Appellant's App. Vol. 2 at 7. Our Supreme Court has long held that "[t]he absence of a key witness through no fault of the State is good cause for extending the time period requirements for early trial under Rule 4." *Woodson v. State*, 466 N.E.2d 432, 434 (Ind. 1984); *see also Wooley v. State*, 716 N.E.2d 919, 924 (Ind. 1999). Although Bradley objected to the motion to continue, his objection was not based on his speedy trial rights. *See Todisco v. State*, 965 N.E.2d 753, 756 (Ind. Ct. App. 2012), *trans. denied*. Indeed, that same day Bradley agreed to a new trial date of August 1, 2016. This extended the period in which the court needed to hold Bradley's trial under Rule 4(C) by an additional 84 days, from May 9, 2016, to August 1, 2016. *See, e.g.*, *State v. Black*, 947 N.E.2d 503, 509 (Ind. Ct. App. 2011). Thus, the trial court had until November 25, 2016, to hold Bradley's trial.

[16] On July 8, 2016, the State moved to vacate the August 1 trial date due to the unavailability of another key witness. Over Bradley's objection, the court granted the motion and reset the trial date for October 31, 2016. Again, the State's request was a valid reason to delay the trial date under Rule 4, and the rescheduled trial date, despite Bradley's objection, was still well within the Rule 4(C) period.

[17] Nonetheless, on September 1, 2016, Bradley moved for discharge under Rule 4(C). However, as demonstrated above, Bradley's motion was premature as the trial court had not yet set Bradley's trial for a date beyond the one-year period. *See, e.g.*, *Wood v. State*, 999 N.E.2d 1054, 1060 (Ind. Ct. App 2013), *trans. denied*. "It is well established that[,] when a motion for discharge for a Criminal Rule 4 violation is made prematurely, it is properly denied." *Stephenson v. State*, 742 N.E.2d 463, 487 n.21 (Ind. 2001). Accordingly, we affirm the trial court's denial of Bradley's first motion for discharge.

[18] As for Bradley's second motion for discharge under Rule 4(C), which he filed after the mistrial and prior to his second trial, we note that there is no Rule 4(C) issue. Rather, Criminal Rule 4(C) does not apply to the time period after a mistrial and prior to a retrial. *E.g.*, *Lahr v. State*, 615 N.E.2d 150, 151 (Ind. Ct. App. 1993). "Instead, when a retrial is required, a defendant must rely on his constitutional speedy trial right, which requires that a defendant be tried within a reasonable time." *Id.* (citations omitted).[2] The trial court held Bradley's second trial 111 days, or just under four months, after it had declared a mistrial in the first trial, and Bradley provides no argument supported by cogent reasoning on appeal that that length of time was, standing alone, unreasonably long. *See* Ind. Appellate Rule 46(A)(8)(a). Accordingly, we affirm the trial court's denial of Bradley's second Rule 4(C) motion as well.

---

[2] The federal constitutional analysis for speedy trial claims is the same analysis that applies to claims made under our state constitution. *Lahr*, 615 N.E.2d at 151 n.2.

Constitutional Speedy Trial Rights

[19] Bradley's Rule 4(C) motions aside, he also argues on appeal that the total delay between his arrest and his second trial violated his constitutional rights to a speedy trial. The Sixth Amendment to the United States Constitution guarantees to an accused in a criminal prosecution "the right to a speedy and public trial." Article 1, Section 12 of the Indiana Constitution likewise guarantees that justice "shall be administered . . . speedily, and without delay."

[20] As our Supreme Court has explained: "In evaluating both federal and Indiana constitutional speedy trial claims, courts balance the same four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant." *Griffith v. State*, 59 N.E.3d 947, 955 (Ind. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind. 1998)). Further, as Bradley's argument alleges constitutional violations, "the proper standard of appellate review is *de novo*." *Ackerman v. State*, 51 N.E.3d 171, 177 (Ind. 2016).

[21] Applying those factors here, we conclude that Bradley has not been denied his constitutional rights to a speedy trial. The length of the delay between his arrest and the beginning of his second trial was 855 days. However, as noted above, Bradley's own requests for or acquiescence in pushing back the trial date was the reason for much of the delay. On July 24, 2015, Bradley agreed to an initial trial date on February 1, 2016, 192 days later. Bradley subsequently agreed to later trial dates of May 9, 2016, and August 1, 2016, which pushed his trial date

back by another 182 days. An additional delay of seventy-one days, to October 11, 2016, resulted from the absence of a necessary witness. And on October 11, the court, at Bradley's request, stayed the trial court proceedings for Bradley to seek an interlocutory appeal. After our Court denied his request and the trial court resumed jurisdiction, the trial court set his trial date for May 15, 2017, "[b]y agreement of the parties." Appellant's App. Vol. 2 at 12. Thus, the 216-day delay between October 11, 2016, and the start of Bradley's first trial on May 15, 2017, was also attributable to Bradley's requests or acquiescence.

[22] Of the remaining 194 days, 111 days resulted from the need for a second trial. And, while Bradley did twice assert his right to a speedy trial under Rule 4(C), he filed those motions notwithstanding his requests for or acquiescence in numerous delays. Finally, Bradley fails to show any prejudice from the delay. *See, e.g.*, *Griffith*, 59 N.E.3d at 955 (Ind. 2016). Accordingly, the trial court did not err under either the United States Constitution or the Indiana Constitution when it denied Bradley's motion for discharge.

### Issue Two: Double Jeopardy

[23] We next address Bradley's argument that his convictions for Count 3, child molesting, as a Level 4 felony, and for Count 4, incest, as a Level 4 felony, violate his right to be free from double jeopardy under Indiana law. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our Supreme Court has interpreted that clause to prohibit multiple convictions based on the same "actual evidence used to convict." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). To determine

the actual evidence used to establish a conviction, we look to the "evidentiary facts" as they relate to "all" of the elements of both offenses. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). In other words, the actual evidence test requires "the evidentiary footprint for all the elements required to prove one offense" to be "the same evidentiary footprint as that required to prove all the elements of another offense." *Thrash v. State*, 88 N.E.3d 198, 208 (Ind. Ct. App. 2017) (quoting *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015)).

[24] Bradley's convictions are not in violation of the actual evidence test under Article 1, Section 14. Bradley's conviction for Count 1, child molesting, as a Level 1 felony, was based on the allegation that he had made T.S. touch his penis with her mouth. His conviction for Count 2, child molesting, as a Level 1 felony, was based on the allegation that he had penetrated T.S.'s vagina with his finger. His conviction for Count 3 was based on "fondling or touching" of T.S. but, unlike his convictions for Counts 1 and 2, required the State to additionally prove that he had engaged in that fondling or touching with the intent to arose or satisfy his own sexual desires. Ind. Code § 35-42-4-3(b) (2018); Tr. Vol. II at 63. And his conviction for Count 4, unlike his other three convictions, required the State to additionally prove that Bradley was T.S.'s grandparent.[3] I.C. § 35-46-1-3(a). As the "evidentiary footprints" of each of

---

[3] In its brief on appeal, the State asserts that Bradley's conviction for incest was based on evidence that he had anally penetrated T.S. with his finger. There is no such evidence in the record. *See, e.g.*, Tr. Vol. II at 54 (arguing, during the prosecutor's rebuttal at closing argument, that the "evidence . . . of digital penetration" was of T.S.'s "genitals"). As such, we do not consider this purported evidentiary basis for Bradley's conviction for incest.

Bradley's four convictions were not the same, his convictions do not run afoul of Article 1, Section 14.

[25] However, the Indiana Supreme Court has also "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy[] but are not governed by the constitutional test set forth in *Richardson.*" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quotation marks omitted). One such rule prohibits "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id.*

[26] Although our Supreme Court has expressly identified that "very same act" test as distinct from the actual evidence test, *id.*, Indiana's subsequent case law[4] has not clearly delineated the two tests or articulated how they might be different. For example, in *Quiroz v. State*, we held that "[t]he only evidence supporting" the defendant's two convictions "consist[ed] of the very same act," and, as such, his convictions were "improper under the *Richardson* actual evidence test." 963 N.E.2d 37, 41 (Ind. Ct. App. 2012), *trans. denied*. On the other hand, in *Taylor v. State*, we acknowledged that the very same act test is different than the actual evidence test, and we held that the very same act test applies when the defendant's "behavior" underlying one offense is "coextensive with the

---

[4] Although the very same act test arises with some frequency in our Court, since adopting this test in *Guyton* the Indiana Supreme Court has not yet applied or otherwise revisited this category of our common-law double jeopardy protections.

behavior . . . necessary to establish an element of" another offense. *Taylor v. State*, 101 N.E.3d 865, 972 (Ind. Ct. App. 2018).

[27] While *Taylor* articulates a logical test to determine whether the very same act underlies multiple convictions, under that reasoning the actual evidence test is superfluous, as the evidentiary facts underlying only one element of multiple offenses is thus sufficient to find a double jeopardy violation. *Cf. Spivey*, 761 N.E.2d at 833 (requiring the defendant to show, for purposes of establishing a double jeopardy violation under the actual evidence test, that the "evidentiary facts" as they relate to "all" of the elements of both offenses were the same). That is, a defendant cannot demonstrate a violation of the actual evidence test without showing the same act underlies both convictions, *see id.*, but once the defendant has met that marginal burden there is no need to proceed to the other elements under the actual evidence test, *see Taylor*, 101 N.E.3d at 972.

[28] Be that as it may, our Supreme Court has concluded that the very same act test is a test apart from the actual evidence test. *Guyton*, 771 N.E.2d at 1143. As such, following the reasoning of *Taylor*, we conclude that there is a reasonable possibility that the behavior underlying Bradley's convictions for Count 1 and Count 2 was coextensive with the behavior underlying his convictions for Count 3 and Count 4. Although the "reasonable possibility" language is most commonly associated with the actual evidence test, *see, e.g.*, *Richardson*, 717 N.E.2d at 53, we have also used that language to determine whether a double jeopardy violation may have occurred under the very same act test, *e.g.*, *Vandergriff v. State*, 812 N.E.2d 1084, 1089-90 (Ind. Ct. App. 2004), *trans. denied*.

A "reasonable possibility" that the trier of fact used the same facts to reach two convictions requires substantially more than a logical possibility. *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). "'[R]easonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* In determining the facts used by the jury to establish the elements of each offense, we consider the charging information, jury instructions, and arguments of counsel. *Id.* at 1234.

[29] Again, the act underlying Count 3 was Bradley's "fondling or touching" of T.S. Appellant's App. Vol. 2 at 22. Neither the charging information nor the jury instructions more specifically identified an act on which to base Count 3. And neither did the attorneys in their arguments to the jury. Indeed, in his rebuttal during closing arguments, the prosecutor expressly stated that Bradley wanted to "satisfy his sexual urges when he fondled her breasts, when he fondled her genitals, when he made her put her face on his genitals, and when he inserted the one finger into her vagina." Tr. Vol. II at 59. The last two acts were the factual bases for Count 1 and Count 2, respectively.

[30] The State argues that Count 3 might have been based on fondling or touching other than those acts that formed the bases of Count 1 and Count 2 and that it is speculation to surmise otherwise. But neither the charging information, the prosecutor's arguments to the jury, nor the jury instructions directed the jury to consider for Count 3 only behavior other than the behavior that was the basis for Count 1 or Count 2. *See, e.g.*, *Lee*, 892 N.E.2d at 1236; *see also* Tr. Vol. II at 33-34, 59. To the contrary, again, during closing argument the prosecutor

conflated the factual bases for Count 1 and Count 2 with the basis for Count 3. Thus, it is reasonably possible that the jury latched onto the behavior that formed the bases for Count 1 and Count 2 as the factual predicate for Count 3. Accordingly, Bradley's conviction for Count 3, child molesting, as a Level 4 felony, is reversed.

[31] The same analysis applies to Bradley's conviction for Count 4. The behavior underlying Count 4 was the same behavior that the State alleged as the premise for Count 1 and Count 2. Indeed, in his closing argument, the prosecutor did not attempt to delineate a different act but, instead, informed the jury that if it found Bradley guilty on Count 1 and Count 2 then the incest allegation was a "slam dunk." Tr. Vol. II at 34. We reverse Bradley's conviction for Count 4, incest, as a Level 4 felony.

### Issue Three: Admission of Evidence

[32] We next consider Bradley's argument that the trial court abused its discretion when it prohibited him from introducing A.S.'s testimony from the first trial to impeach her during the second trial. We review a trial court's evidentiary rulings for an abuse of discretion. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Id.*

[33] According to Bradley, A.S.'s testimony at the first trial was inconsistent with her testimony at the second trial. As such, he continues, the prior testimony was admissible as a prior inconsistent statement, and the refusal to admit that

testimony impaired his right to cross-examine A.S. and present his defense. We cannot agree that the trial court was obliged to admit A.S.'s prior testimony.

[34] Prior to Bradley's second trial, the trial court excluded A.S.'s first testimony on the basis that she lacked personal knowledge of any penetration and, thus, her answer to Bradley's question was the product of hearsay. The trial court's assessment is correct, and Bradley does not suggest otherwise on appeal. Rather, he instead asserts that the hearsay was reliable as an excited utterance from T.S., but he made no offer of proof to the trial court on that theory. Further, Bradley makes no argument on appeal that he has a constitutional right to present otherwise inadmissible hearsay evidence. *See* App. R. 46(A)(8)(a). As such, we cannot say that the trial court abused its discretion when it excluded A.S.'s prior statement. *See also Snow*, 77 N.E.3d at 177 (noting that "discretion means that, in many cases, trial judges have options. They can admit *or* exclude evidence, and we won't meddle with that decision on appeal.").

### Issue Four: Sufficiency of the Evidence

[35] We next turn to Bradley's argument that the State failed to present sufficient evidence to support his convictions. As we have already determined that Bradley's convictions for Count 3 and Count 4 must be vacated under double jeopardy principles, we limit our review of this issue to Bradley's convictions for Count 1 and Count 2. In our review of sufficiency issues, "we examine only 'the probative evidence and reasonable inferences' that support the verdict."

*Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)).

[36] The State presented sufficient evidence to support Bradley's conviction for Count 1, which required the State to show that Bradley had engaged in an act that involved his penis and T.S.'s mouth.[5] In her recorded statement to Elfreich, which was played to the jury, T.S. stated that Bradley touched his penis against "all of" the parts of her face. State's Ex. 1 at 16:21. As the prosecutor suggested during his closing argument, that includes the mouth. We agree and hold that the State presented sufficient evidence to support Count I. *See, e.g.*, *Meehan v. State*, 7 N.E.3d 255, 258-59 (Ind. 2014).

[37] The State also presented sufficient evidence to support Bradley's conviction for Count 2, which required the State to show that Bradley had penetrated T.S.'s vagina with his finger.[6] Again, in her recorded statement to Elfreich, T.S. stated that Bradley had done just that. As such, the State presented sufficient evidence to support Bradley's conviction for Count 2.

[38] Nonetheless, Bradley argues on appeal that we should disregard T.S.'s statements under the incredible dubiosity rule. Under that rule, "a court will impinge on the jury's responsibility to judge the credibility of witnesses only when it has confronted 'inherently improbable' testimony or coerced,

---

[5] Bradley does not challenge the sufficiency of the State's evidence on the other elements of this conviction.

[6] Bradley does not challenge the sufficiency of the State's evidence on the other elements of this conviction.

equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). But, for the incredible dubiosity rule to apply, there must be, among other things, a "sole testifying witness." *Id.* at 756. That is not the case here, where D.B. testified and at least partly corroborated T.S.'s experience with Bradley. And insofar as Bradley asserts on appeal that D.B.'s testimony or other evidence presented by the State should not have been given weight by the jury, we will not consider such arguments. We affirm Bradley's convictions for Count 1 and Count 2.

## Issue Five: Fundamental Error

[39] Finally, Bradley asserts that the trial court committed fundamental error when it did not intervene during closing arguments after the prosecutor had stated that Bradley had "a guilty look on his face because he's guilty." Tr. Vol. II at 37. Because Bradley did not preserve this issue by objecting and requesting an admonishment from the trial court, to succeed on appeal he must demonstrate that fundamental error occurred. *E.g.*, *Dumas v. State*, 803 N.E.2d 1113, 1117-18 (Ind. 2004). Fundamental error is an "extremely narrow" exception to the usual rule of waiver and "encompasses only errors so blatant that the trial judge should have acted independently to correct the situation." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (quotation marks omitted). Fundamental error is error that "made a fair trial impossible or constituted a clearly blatant violation of basic and element principles of due process presenting an undeniable and substantial potential for harm." *Id.* (quotation marks omitted).

Bradley has not met that high burden. While we do not approve of the prosecutor's comment, the comment was *de minimis* and did not make a fair trial impossible. We affirm.

## Conclusion

In sum, we affirm Bradley's convictions for Count 1, child molesting, as a Level 1 felony, and Count 2, child molesting, as a Level 1 felony. However, as it is reasonably possible that the jury found Bradley guilty on Count 3 and Count 4 for the very same acts that were the bases of his convictions for Count 1 and Count 2, we reverse Bradley's convictions for Count 3, child molesting, as a Level 4 felony, and Count 4, incest, as a Level 4 felony. We remand with instructions that the trial court vacate Bradley's convictions and sentences on Count 3 and Count 4 accordingly.

Affirmed in part, reversed in part, and remanded with instructions.

Crone, J., and Pyle, J., concur.