

FILED

Jul 31 2019, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lola M. Sells,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 31, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2691<br><br>Appeal from the Franklin Circuit<br>Court<br><br>The Honorable J. Steven Cox,<br>Judge<br><br>Trial Court Cause No.<br>24C01-1506-F3-626 |

**Najam, Judge.**

## Statement of the Case

[1] Lola M. Sells appeals her conviction for dealing in methamphetamine, as a Level 3 felony, following a jury trial. Sells raises four issues for our review, which we restate as follows:

1. Whether she preserved for appellate review her argument that the trial court violated her right to be free from double jeopardy when it permitted the State to try her after the court had previously declared a mistrial.

2. Whether Sells' defense attorney opened the door to comments made by the prosecutor during his rebuttal following her attorney's closing argument.

3. Whether her two convictions violate the actual evidence test under Article 1, Section 14 of the Indiana Constitution.

4. Whether the State proved venue in Franklin County.

[2] We affirm.

## Facts and Procedural History

[3] In August of 2014, Adam Wagner used and dealt methamphetamine out of his residence in Rush County. During that time, his girlfriend, Felicia Craig, also used methamphetamine. In late August, Wagner arranged to have Craig buy seven grams of methamphetamine from Sells at a predetermined location in another county.

[4] In the early morning hours of August 26, after Craig had met with Sells and purchased the seven grams of methamphetamine, Craig began to drive back to meet with Wagner. On her way back, Officer Chris Smith of the Batesville Police Department initiated a traffic stop of Craig's vehicle for a lane violation

on Interstate 74 in Franklin County. Officer Smith gave Craig a warning and let her go.

[5] Craig then called Wagner. Wagner thought Craig sounded in a "way I've never heard her before"; she was "[s]uper excited, super scared, just all over . . . she was very confused, excited." Amended Tr. Vol. 2 at 135. Craig told Wagner that "she had just got pulled over and that she ate all those drugs and she was scared." *Id.* Craig then went silent.

[6] Around 6:30 that morning, Greg Kinker met an associate at a truck stop in Decatur County, just a few miles from the location of Officer Smith's traffic stop of Craig's vehicle, to carpool to work. While there, he observed a "leg sticking out the window" of the driver's side of a nearby vehicle and "thought somebody was sleeping." *Id.* at 33. However, when he came back to the truck stop to get his vehicle around 5:00 that afternoon, Kinker "noticed that vehicle sitting there with the leg sticking out again and figured nobody can be in that position all day long." *Id.* Kinker went to check on the person, realized that "she was unresponsive, dead," and called 9-1-1. *Id.* The decedent was later identified as Craig, and she had died of an overdose of methamphetamine.

[7] In June of 2015, the State charged Sells with dealing in methamphetamine, as a Level 3 felony, and with conspiracy to deal methamphetamine, also as a Level 3 felony. On July 25, 2016, the trial court began Sells' jury trial in her absence and empaneled a jury. The court then directed the parties to begin their evidentiary presentations at the beginning of the next day.

[8] However, prior to the commencement of the evidentiary presentations, the trial court, out of the presence of the parties and the jury, declared a mistrial *sua sponte* and discharged the jury. According to the court's written order: "press coverage in the Brookville Democrat/American . . . reported that the defendant failed to appear and 'could not be contacted.' The article further quoted the State as offering that the reason the trial court not proceed was because the defendant was not present." Appellant's App. Vol. II at 38. The court determined that "the disclosure of issues . . . of matters resolved on the record out of the presence of the jury before the production of evidence so taints the jury that no limiting instructions can cure the defect." *Id.* The court then directed that the State would have a second opportunity to try Sells "at the next convenient date." *Id.*

[9] More than two years later, the court held Sells' second jury trial. At that trial, the State called Wagner, Officer Smith, and Kinker as witnesses. The State also called, among others, Sells' acquaintance Richard Campos as a witness. Campos testified that, about a week after Craig had died, Sells told him that Craig had "come to my house and left my house," "[g]ot pulled over, freaked out[,] and swallowed" the "meth" and "overdosed." Amended Tr. Vol. 2 at 214.

[10] During Sells' closing argument, her attorney argued that the State had failed to prove that Sells dealt or conspired to deal methamphetamine "in Franklin County." Amended Tr. Vol. III at 23. Instead, her attorney continued, the State "g[ot] turned down everywhere else" and so the prosecutor in Franklin

County decided "to take our shot here." *Id.* at 22. Sells' attorney accused the State of "forum shop[ping]," which he told the jury might happen if a party "do[esn't] really like the Judge in this county, or . . . do[esn't] really like potential jurors in another county . . . ." *Id.* at 23. Sells' attorney then accused the local prosecutor of finding facts "[t]o make [the prosecution in Franklin County] work" and to "fit the narrative . . . [b]ecause" otherwise "there's no crime here . . . ." *Id.* at 24-25. This included suggesting that the State suborned perjury from Wagner and Campos. *See id.* at 26, 30. The prosecutor objected to Sells' attorney's argument, but the trial court stated that Sells' attorney was "permitted to characterize the evidence." *Id.* at 30.

[11] In his rebuttal, the prosecutor responded to the argument of Sells' attorney as follows:

> You know, ladies and gentlemen[,] I've tried a lot of cases. And this is my 40th year as a Prosecutor in this county. I'm proud of the work I do and I'm proud of law enforcement. You just heard a final argument. I don't normally get upset, it's the final argument. That's his job. You attack the credibility of the witnesses. But when I heard the innuendo that me [and various law enforcement officers] started our investigation to target Lola Sells, we are the conspirators. We did that. That upsets me. If we would do that, we should be charged and in jail. We don't make up facts, we present them. . . . [W]here is the evidence on anything he said? He said the officers went to Adam Wagner and made a deal with him, to give him the Defendant . . . . There is nobody that has testified to that. He's pulling out of the air. Why is he doing that? He attacked [e]very witness. If he had attacked just one, it's okay. But he attacked the whole system. He's tearing the whole system down.

I'm embarrassed. I don't know how they do things in Indianapolis, [where Sells' attorney is from,] but in Franklin County, we give it to you straight. We don't make the facts, we present them. And he's saying—I say bring your common sense, your life experiences, he says there's no evidence of a conspiracy, and we had to have Adam involved in it. How do you get around these text messages [between Wagner, Sells, and Craig]? He said there's no evidence of seven grams[] but [for] Adam Wagner. He wants you to throw out Richard Campos completely. Is that part of our conspiracy? We hunted down Richard Campos? We had no idea who he was. He came to us. He said he had an axe to grind with the Defendant. Where did you hear that? Did I sleep over that? I don't think so. I never heard that they had any dispute on anything. He spent the night at her house.

It's a desperate attempt because the evidence is overwhelming. I thought—at first I thought, okay, his one argument is going to be, he's hitting on [venue]. He did that opening statement, jury selection, . . . he did it on the witnesses. He did it in final. That's fair game. But don't attack the system because your client—the evidence is overwhelming on guilty, to try to take me down and tell me I'm unethical, that I conspired.

*Id.* at 33-34. At that point, Sells' attorney objected to the prosecutor's use of the word "unethical" and the prosecutor allegedly "attacking the Defense. He is attacking my role in this case." *Id.* The trial court overruled the objection on the ground that the prosecutor was "characteriz[ing] what he heard" during Sells' closing argument, but nonetheless the court admonished the jury that the attorneys' arguments are not evidence. *Id.* at 34.

[12] The jury found Sells guilty as charged. The court entered its judgment of conviction and sentenced Sells to an aggregate term of twenty years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## *Issue One: Double Jeopardy*

[13] On appeal, Sells first asserts that the trial court denied her her right to be free from double jeopardy under the Fifth Amendment when it permitted the State to retry her after the trial court had declared a mistrial during her first trial.[1] Generally, a trial court may not enter a mistrial over a defendant's objection. *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010). However, "[a] defendant waives [her] right to raise double jeopardy by failing to make a timely objection to the discharge of the jury or to the court's declaration of a mistrial." *Ried v. State*, 610 N.E.2d 275, 279 (Ind. Ct. App.), *summarily aff'd*, 615 N.E.2d 893, 893 (Ind. 1993).

[14] Sells did not lodge any objection to the trial court's discharge of the first jury, the declaration of the mistrial, the court's explicit instructions to the State that it may retry her, or the actual, second trial held more than two years later. At no point after the declaration of the mistrial did Sells move for dismissal of the State's charges. Indeed, Sells identifies no portion of the record, nor is any such portion of the record apparent, in which she expressed any dissatisfaction with

---

[1] There is no dispute that double jeopardy attached when the first jury was empaneled. *E.g.*, *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010).

the trial court's procedures prior to her argument in her brief to this Court. And while Sells baldly states on appeal that the trial court's *sua sponte* mistrial declaration did not give her counsel an opportunity to object, we conclude that she has not met her burden on appeal to demonstrate that she could not have filed a timely objection with the trial court or otherwise expressed her dissatisfaction with the court's procedures long before this appeal. Accordingly, we hold that Sells has not preserved her double-jeopardy argument for our review, and we do not consider it. *See id.*

### Issue Two: Prosecutorial Misconduct

[15] Sells next asserts that the prosecutor committed misconduct during his rebuttal argument to the jury because, according to Sells, the prosecutor "disparag[ed] Sells' defense counsel and his role in the case" and further "vouch[ed] for the State's witnesses." Appellant's Br. at 10. As our Supreme Court has explained:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an

admonishment to the jury, and if further relief is desired, move for a mistrial.

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citations, emphases, and quotation marks omitted).

The parties dispute on appeal whether Sells properly preserved her claim of prosecutorial misconduct and, if not, whether the prosecutor's comments during his rebuttal amount to fundamental error. But we need not consider those questions. Sells' closing argument accused the prosecutor of suborning perjury and inventing facts to obtain jurisdiction in Franklin County after other counties had supposedly declined prosecution. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Id.* at 669 (quoting *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006)). The prosecutor's comments on rebuttal here were wholly in response to the allegations and inferences raised by Sells during her closing argument and did not go beyond such a response. That is, Sells opened the door to the comments made by the prosecutor in his rebuttal. Accordingly, we reject Sells' claim of prosecutorial misconduct.

### Issue Three: Article 1, Section 14

Sells next asserts that her two convictions violate the actual evidence test under Article 1, Section 14 of the Indiana Constitution. As we have often stated:

> Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our Supreme Court has interpreted that clause to prohibit

multiple convictions based on the same "actual evidence used to convict." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). To determine the actual evidence used to establish a conviction, we look to the "evidentiary facts" as they relate to "all" of the elements of both offenses. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). In other words, the actual evidence test requires "the evidentiary footprint for all the elements required to prove one offense" to be "the same evidentiary footprint as that required to prove all the elements of another offense." *Thrash v. State*, 88 N.E.3d 198, 208 (Ind. Ct. App. 2017) (quoting *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015)).

*Bradley v. State*, 113 N.E.3d 742, 751 (Ind. Ct. App. 2018), *trans. denied*.

[18]    Sells' two convictions do not violate the actual evidence test under Article 1, Section 14. In particular, to prove her conviction for conspiracy to deal methamphetamine, the State was required to show, among other things, that "Craig performed an overt act in furtherance of the agreement by transporting the methamphetamine from Sells' home towards Wagner's location in Rushville." Appellant's App. Vol. II at 16. Nothing about Sells' conviction for dealing in methamphetamine required the State to make a similar showing, and there is no reasonable possibility that the jury used that evidence of conspiracy to support her conviction for dealing. Accordingly, Sells' argument under Article 1, Section 14 must fail.[2]

---

[2] Sells presents no argument for our review under the "very same act" test, and, as such, we do not consider that possible argument. *See Bradley*, 113 N.E.3d at 751-53.

### *Issue Four: Venue*

[19] Finally, Sells asserts that the State failed to prove venue in Franklin County for her conviction for dealing. We initially note that Sells erroneously characterizes this issue as a challenge to the sufficiency of the evidence underlying her conviction. Of course, "[v]enue is not an element of the offense. Accordingly, although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proved beyond a reasonable doubt." *Alkhalidi v. State*, 753 N.E.2d 625, 628 (Ind. 2001) (citations omitted).

[20] "Venue is not limited to the place where the defendant acted. To the contrary, the legislature may provide for concurrent venue when elements of the crime are committed in more than one county." *Baugh v. State*, 801 N.E.2d 629, 631-32 (Ind. 2004). And when multiple charges are "integrally related—in other words, one thing led to another—then the crimes may be considered a single chain of events for purposes of venue," including counties through which the defendant travels in the commission of her crimes. *Abran v. State*, 825 N.E.2d 384, 392 (Ind. Ct. App. 2005) (citing *French v. State*, 266 Ind. 276, 284, 362 N.E.2d 834, 839 (1977)), *trans. denied*.

[21] The State met its burden to establish venue in Franklin County. The charges of dealing and conspiracy to deal were integrally related charges. Sells' delivery of methamphetamine to Craig was part of a single chain of events intended to culminate in the delivery of the methamphetamine to Wagner, and in

performing those acts Craig drove through Franklin County. *Abran*, 825

N.E.2d at 392. Accordingly, Franklin County was a county of proper venue.

# Conclusion

In sum, we affirm Sells' convictions.

Affirmed.


Baker, J., and Robb, J., concur.