

FILED

Oct 31 2019, 6:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stanley Watson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 31, 2019

Court of Appeals Case No.
19A-CR-49

Appeal from the Ripley Circuit
Court

The Honorable James D.
Humphrey, Special Judge

Trial Court Cause No.
69C01-0010-CF-52

**Baker, Judge.**

After serving nearly eleven years in the Department of Correction as an habitual offender, Stanley Watson attained post-conviction relief and had his habitual offender status vacated. The State then filed a new petition alleging that Watson was an habitual offender based on other information. After continuances, delays, and recusals amounting to another six and two-thirds years, Watson was once again adjudicated to be an habitual offender. Now, Watson appeals his habitual offender status, arguing that his right to a speedy trial was violated pursuant to Indiana Criminal Rule 4(C). Finding that the State failed to bring Watson to court within the one-year deadline, we reverse and remand with instructions to vacate Watson's habitual offender status.

# Facts[1]

In 2001, Watson was convicted of Class A felony dealing in cocaine and Class A conspiracy to deliver cocaine following a jury trial. In a separate hearing, the jury also adjudicated Watson to be an habitual offender based on convictions from 1990, 1992, and 1997. Then, on August 28, 2001, the trial court sentenced Watson to fifty years imprisonment, enhanced by thirty years due to the habitual offender adjudication, for an aggregate sentence of eighty years.

However, on April 2, 2012, the trial court granted Watson's petition for post-conviction relief and vacated the habitual offender adjudication, finding that

---

[1] We held oral argument for this case on October 9, 2019, in Indianapolis. We thank both parties for their excellent presentations.

two of the three felonies cited by the State could not form the basis of an habitual offender adjudication. The State was granted leave to amend the information, and on November 28, 2012, the State refiled its habitual offender allegation based on three other convictions from 1972, 1977, and 1981.

[4] The following represents the long procedural history of this case after the State refiled the habitual offender allegation:

- On January 11, 2013, Watson moved to continue the hearing originally set for January 29, 2013. The trial court granted the motion on January 14, 2013, and scheduled the new hearing for September 10, 2013.
- On September 13, 2013, Watson moved to continue the hearing again, with Watson's counsel stating that he had been "unable to secure [Watson's] attendance," appellant's app. vol. ii p. 102, for the September 10, 2013, hearing because Watson was in federal prison for an unrelated matter. The trial court granted Watson's motion and scheduled the new hearing for June 3, 2014.
- On November 14, 2013, the trial court *sua sponte*—and without explanation—rescheduled Watson's hearing for July 8, 2014.
- On June 12, 2014, Watson again moved to continue the July 8, 2014, hearing because Watson's counsel was working on a murder trial and could not be present at the July 8 hearing. On June 16, 2014, the trial court granted Watson's motion and rescheduled the hearing for February 10, 2015.
- Then, on January 21, 2015, the trial court judge issued an order recusing himself from all proceedings related to Watson's habitual offender status, citing a conflict of interest.
- A new special judge was appointed for the matter on January 28, 2015. However, the new special judge did not accept his appointment until August 12, 2015, after entering an order detailing his assignment.[2]

---

[2] Neither the special judge's order nor anything else in the record explains why it took nearly eight months to accept his appointment.

- On October 20, 2015, the trial court set the matter for pretrial conference on March 8, 2015,[3] and for hearing on April 5, 2016. On March 2, 2016, the trial court *sua sponte* rescheduled the pretrial conference for March 9, 2016.
- At the March 9, 2016, pretrial conference, the State moved to continue the proceedings, which the trial court granted over Watson's objections. The trial court then scheduled the new pretrial conference for September 12, 2016, and the new hearing for October 18, 2016. Later, on May 10, 2016, the trial court *sua sponte* moved the hearing to October 4, 2016, two weeks earlier than originally planned. All parties attended the September 12, 2016, pretrial conference.
- On October 3, 2016, the State moved to continue the October 4, 2016, hearing. The trial court granted the motion that same day and rescheduled the hearing for March 21, 2017.
- On April 11, 2017, Watson, without the assistance of counsel, requested a copy of his Chronological Case Summary from the trial court clerk after he had not been transported to court for the March 21, 2017, hearing. In that request, Watson did not ask for a speedy trial but complained of his counsel's ineffectiveness.
- On October 5, 2017, the State moved for a new hearing date, but before the trial court could respond, the special judge recused himself because he was no longer serving as a senior judge.
- A second special judge was appointed to Watson's case on October 11, 2017, but he issued an order recusing himself on October 12, 2017, due to a conflict of interest. The trial court clerk then appointed a third special judge to this matter on that same date.
- On November 20, 2017, the trial court set the matter for a final pretrial conference on April 2, 2018, and for hearing on May 15, 2018. However, on March 19, 2018, Watson, without the assistance of counsel, moved to continue the hearing for a later date because he had not been in contact with his counsel for more than a year. The trial court granted his motion.
- On April 10, 2018, Watson's counsel moved to withdraw himself due to scheduling conflicts, which the trial court granted on April 13, 2018. Watson's new counsel filed an appearance on April 17, 2018.
- Then, on April 26, 2018, Watson moved to continue the pretrial conference and hearing, and the trial court granted the motion on April

---

[3] The trial court later corrected this date to March 8, 2016, after Watson brought this mistake to the trial court's attention on December 9, 2015.

30, 2018. The trial court set the new dates for the pretrial conference on October 22, 2018, and the hearing on November 27-28, 2018.

- On November 15, 2018, Watson moved to dismiss the case, citing a violation of Indiana Criminal Rule 4(C) and his right to a speedy trial. Following a separate November 20, 2018, hearing on this matter, the trial court denied Watson's motion to dismiss on November 28, 2018.

[5] In denying Watson's motion to dismiss, the trial court made the following conclusions of law:

> [] Of the six and 2/3 years of delay in this case, slightly less than four years is attributable to either the State or this Court. . . .
>
> [] Seven hundred and thirty-two (732) days of delay in this case are directly attributable to continuance requests by Watson's original attorney. This weighs against Watson.
>
> [] Four hundred and seventy-seven (477) days of delay can be directly attributable to the State, based on its two continuance motions and the time period between when post-conviction relief was granted and when it requested a[n] habitual offender [rehearing]. This weighs against the State. There is no evidence, however, that this period of delay was the result of bad faith or a deliberate attempt to delay [rehearing] in order to prejudice Watson. . . .
>
> [] Nine hundred and eighty (980) days of delay are attributable to actions of this Court. Again, this weighs against the State, but less so than delays directly caused by the State.
>
> [] The Court also notes that much of its delay was caused by the need to appoint two different special judges during the pendency of this case. The Indiana Supreme Court has held that, at least with respect to Criminal Rule 4(C), delays in trial caused by the need to appoint a special judge are not attributable to the State. *State v. Larkin*, 100 N.E.3d 700, 705-06 (Ind. 2018). The Court acknowledges that a constitutional speedy trial analysis is different than a Rule 4(C) analysis. *See Logan* [*v. State*, 16 N.E.3d 953, 963 (Ind. 2014)]. Still, delays related to special judge appointments in this case should not weigh heavily against the State.

> [] Two hundred and thirty-two (232) days of delay in this case are attributable to the withdrawal of Watson's original attorney and the need for his new attorney to prepare for trial. Watson did not directly cause this delay and it should not weigh against him. However, it also seems unfair to charge the State with this delay. The Court views this period of delay as a neutral factor, weighing for or against neither party.

Appellant's App. Vol. III p. 148-49 (some internal citations omitted). In sum, the trial court determined that the trial court and the State were jointly responsible for 1,457 days of delay and that Watson was responsible for 732 days of delay. Neither party disputes these findings.

[6] Following the November 27-28, 2018, rehearing, the jury adjudicated Watson to be an habitual offender. Accordingly, the trial court re-enhanced Watson's sentence by thirty years on December 20, 2018. Watson now appeals.

# Discussion and Decision

[7] We consolidate Watson's multiple arguments into one dispositive issue: whether the State failed to bring Watson to court within the one-year deadline articulated in Indiana Criminal Rule 4(C).

[8] Generally, "[i]n reviewing Criminal Rule 4 claims, we review questions of law de novo, and we review factual findings under the clearly erroneous standard." *Bradley v. State*, 113 N.E.3d 742, 748 (Ind. Ct. App. 2018). Because the facts here are undisputed, our review is de novo. *Id.* at 749; *see also Austin v. State*, 997 N.E.2d 1027, 1039-40 (Ind. 2013).

Indiana Criminal Rule 4(C) states, in pertinent part, that:

> [n]o person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later[.]

"This rule is intended to give effect to the right to a speedy trial guaranteed by both the federal and state constitutions." *O'Neill v. State*, 597 N.E.2d 379, 382 (Ind. Ct. App. 1992). Rule 4(C) places an affirmative duty on the State to bring a defendant to trial within one year. *Tinker v. State*, 53 N.E.3d 498, 502 (Ind. Ct. App. 2016).

It is well established that "[t]he federal constitution establishes rights that the states may choose to expand[.]" *Edwards v. State*, 902 N.E.2d 821, 829 (Ind. 2009). For Criminal Rule 4(C), "the time limits set by [this] rule are more rigorous than the constitutional protection to speedy trial[.]" *Tyner v. State*, 166 Ind. App. 45, 49, 333 N.E.2d 857, 859 (Ind. Ct. App. 1975). Stated another way, Indiana has chosen to provide criminal defendants with greater protection than that afforded by the Sixth Amendment alone. Criminal Rule 4(C) creates a bright-line rule that a person facing criminal charges shall be brought to answer those charges within one year. Otherwise, he must be discharged.

When interpreting rules and statutes, "we assign words their plain and ordinary meaning unless the statute provides definitions otherwise." *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind. Ct. App. 2007). Nothing in the plain language of the rule suggests that only criminal defendants facing their initial trial or only those

unlawfully held may invoke this rule. Rather, Criminal Rule 4(C) merely says that "*[n]o person* shall be held *on recognizance or otherwise* to answer a criminal charge for a period in aggregate embracing more than one year[.]" (Emphases added). In other words, even those criminal defendants—like Watson—who have already been duly convicted and are currently incarcerated fall under the parameters of Criminal Rule 4(C). The broad and inclusive terms of Criminal Rule 4(C) apply to various criminal defendants in various situations. After all, Watson is a person who had to answer for the criminal charge of being an habitual offender and was held in prison for this charge. Moreover, it is axiomatic—and neither party contests the fact—that the State and the trial court are jointly responsible for nearly four years of delay in bringing Watson to court. And the record provides little clarity as to why it took the State so long to actually conduct the habitual offender rehearing, which ultimately took less than an hour.[4] Thus, Criminal Rule 4(C) may be enforced in Watson's case.

[12] The State contends that Criminal Rule 4(C) does not apply here. The State cites *Poore v. State*, in which our Supreme Court determined that Criminal Rule 4(B)'s mandate to bring a criminal defendant to trial within seventy days upon request applies to mistrials. 685 N.E.2d 36, 41 (Ind. 1997). Because our

---

[4] During oral argument, the State repeatedly blamed Watson for its own failures in bringing Watson to court for the habitual offender rehearing. However, we remind the State that "Criminal Rule 4 places an affirmative duty *on the State* to bring a defendant to trial." *Bryant v. State*, 984 N.E.2d 240, 245 (Ind. Ct. App. 2013) (emphasis added). It was not Watson's responsibility to ensure that the proper special judge without conflicts of interest was appointed to his case, nor was it his responsibility to necessarily remind the State of its obligations under Criminal Rule 4(C).

Supreme Court had the opportunity in *Poore* to address Criminal Rule 4(C)'s scope and chose not to, the State argues, *Poore* precluded any legal discussion about the rule's applicability to habitual offender rehearings. Thus, the State maintains that Watson's arguments contravene clear Indiana precedent. However, the State's reliance on *Poore* is misguided because *Poore* did not foreclose Criminal Rule 4(C)'s application to habitual offender rehearings. In fact, the *Poore* Court explicitly stated that "[w]e express no other opinion on whether [a]n habitual offender hearing is a trial for any other purposes." *Id.* at 39. In other words, our Supreme Court gave no definitive opinion on Criminal Rule 4(C), meaning the rule's enforcement in cases involving habitual offender adjudications is not prohibited.

[13] Our Supreme Court crafted Criminal Rule 4 and its attendant provisions to provide a bright line for enforcing the requirements of a speedy trial under the Federal Constitution's Sixth Amendment. One of those provisions established a definitive and reliable timeline within which the State must bring a person to court to answer for the charges filed against him. Thus, we conclude that the State did not abide by Criminal Rule 4(C)'s requirements to discharge a defendant if he is not brought to trial within one year. After nearly six and two-thirds years of inexplicable delay—with at least one year of delay directly attributable to the State—we find that there was a Criminal Rule 4(C) violation. Accordingly, Watson should not have been held to answer to the allegations that he is an habitual offender.

[14]     The judgment of the trial court is reversed and remanded with instructions to

vacate Watson's habitual offender status.


Crone, J., concurs.
Kirsch, J., dissents with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Stanley Watson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
19A-CR-49

**Kirsch, Judge, dissenting.**

I respectfully dissent.

In basing its decision on Criminal Rule 4 (C)'s mandate that no person shall be held to answer a criminal charge for a period greater that one year, the majority ignores that the one-year period set forth in the rule runs from the date of the defendant's arrest or the date that the criminal charge is filed. Here, both of such dates had expired more than a decade prior to the Defendant's filing his petition for post-conviction relief, and the Defendant himself sought multiple

continuances of the hearing on his petition which took the proceeding outside of the one-year period.

[17] The Defendant filed motions for continuances on January 11, 2013, September 13, 2013, June 12, 2014, March 19, 2018 and April 26, 2018, and the trial court observed that 732 days of the delay were directly attributable to the Defendant, a time delay greatly exceeding Rule 4 (C)'s one-year mandate.

[18] Unlike the trial on a criminal charge in which the evidence is often based on the recollections of witnesses -- recollections which fade with time, the evidence in the habitual offender phase is documentary and unaffected by the time lapse.

[19] I would affirm the decision of the trial court.