William WISE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9806–CR–333.

Supreme Court of Indiana.

Nov. 19, 1999.

**1194**

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

William Wise was convicted of the murder of his seven-week-old son Matthew and of arson as a Class A felony. He was sentenced to consecutive terms of sixty years for murder and fifty years for arson. In this direct appeal he contends that (1) he was denied a fair trial because of the trial court's rulings on the admissibility of certain evidence; (2) there was insufficient evidence to support giving an instruction on accomplice liability; (3) the prosecutor engaged in misconduct by objecting to the admission of evidence found in the fire debris; (4) the constitutional guarantee against unreasonable searches and seizures was violated when insurance company personnel searched his home without a warrant; and (5) there is insufficient evidence to support his convictions. Although we affirm the trial court on these issues, we reduce Wise's conviction for arson as a Class A felony to a Class B felony because the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of arson as a Class A felony.

### Factual and Procedural Background

William and Michelle Wise were married in July of 1992, two months after learning that Michelle was pregnant with Wise's child. Michelle delivered a baby boy, Matthew, on January 15, 1993. The three resided in a home with a central alarm system connected to smoke detectors and a burglar alarm. Matthew's nursery was on the second floor and the Wises' bedroom was on the ground level. A baby monitor was located under Matthew's bed and the Wises were able to hear Matthew crying through a portable receiver.

At about 2:00 a.m. on March 6, 1993, the Wises awoke to the sound of Matthew crying. Wise went upstairs to feed the baby and remained upstairs on the sofa afterward. Sometime between 4:30 and 5:00 a.m., Michelle went upstairs where she found Wise asleep on the sofa. She spoke to him for about ten minutes and

then started downstairs. Although Michelle did not see or smell any smoke, the alarm went off as she approached the stairway. The alarm had gone off previously when there was no fire. Wise went down the stairway to check the main control panel and Michelle followed. After checking another control panel located in the downstairs foyer, the Wises observed smoke coming from the upper level of the home. Wise then returned upstairs to get a cordless phone but did not go down the hallway to Matthew's room. Instead, he brought the phone downstairs, attempted to call 911, but told Michelle that the phone was not working. Wise asked Michelle to go to a neighbor's house to call 911, and stated that he would get Matthew. Michelle called 911 from a neighbor's home at 5:09 a.m., and Wise called 911 from another neighbor's house at 5:10 a.m. Michelle did not tell the 911 operator that Matthew was in the house, but Wise did state that "[t]he baby" was upstairs.

In his statement to police, Wise reported that before calling 911 he had made it to the hallway outside of Matthew's bedroom but was forced to turn back because he was having problems breathing. However, Indianapolis police officer Keith Williams arrived within ninety seconds of the dispatch and found Wise standing in the doorway. Wise, who had previously received fire training and was employed at the time as a fire/EMS dispatcher, was clad in firefighter's clothing (helmet, jacket, and boots) and told Williams that he was with the Indianapolis Fire Department. Williams believed that Wise had not been in the house because he was not coughing and did not have any soot on his face. Although Wise told Williams that there was a baby in the house, he did not mention that the child was his or indicate that he had attempted a rescue. At Williams' suggestion, the two men entered the house. They went up the stairs and turned left towards Matthew's room. Williams, who was not wearing fire gear, was overwhelmed by smoke and backed out of the house. Firefighters arrived as Williams was exiting, and Wise collided with one firefighter near the top of the stairs. The firefighters went to Matthew's room and extinguished the fire with a two to three second blast of a firehose at 5:16 a.m. The contents of the room were completely burned so that nothing stood more than six inches above the floor. After searching through the rubble by hand, a firefighter discovered Matthew's body.

Matthew's entire body, except for a portion of the groin area, was severely charred. Major portions of his arms and legs had been burned away, and the remaining underlying soft tissues were exposed. The pathologist opined that such injuries could not have been caused by a non-accelerated fire of fifteen to twenty minutes in duration. David Lepper, an Indianapolis Fire Department investigator, examined the remains of Matthew's room and concluded that the fire was intentionally set. James Finnerman, an electrical engineer, ruled out several accidental causes and also concluded that the fire had been intentionally set.

Nearly a year after the fire, Wise was charged with murder, felony murder, and arson as a Class A felony. After a two week trial a jury convicted him of all counts. The trial court merged the murder and felony murder convictions and sentenced Wise to consecutive terms of sixty years for murder and fifty years for arson.

### I. Denial of a Fair Trial

Wise contends that he was denied a fair trial based on three rulings by the trial court. First, the trial court admitted a videotape of the burning of a "test room." Second, the judge ruled inadmissible evidence of the fire-starting capacity of baby monitors other than the specific Fisher Price model that had been in Matthew's room. Third, the trial court admitted testimony that Wise and Michelle had discussed the prospect of an abortion weeks before their marriage.

A. *Demonstrative Evidence*

■ State's exhibits 47 and 55 were videotapes of a "test room" similar to Matthew's room that was burnt by an independent laboratory. The State asked fire investigator Lepper if there was any way to illustrate his testimony about "the rapid burning, the total destruction of the room, point of origin, V patterns, is there anything else that you have that could illustrate that in a way other than State's Exhibit Number 55, or as well?" Lepper responded no. The exhibits were then admitted, over Wise's objection, as demonstrative exhibits only.

■ Demonstrative evidence is evidence offered for purposes of illustration and clarification. *See Null v. State*, 690 N.E.2d 758, 761 (Ind.Ct.App.1998) (citing *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186, 1195 (Ind.Ct.App.1993)). To be admissible, the evidence need only be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Id.* The admissibility of demonstrative evidence, like all evidence, is also subject to the balancing of probative value against the danger of unfair prejudice. *See Berry v. State*, 715 N.E.2d 864, 867 (Ind.1999); Ind. Evidence Rule 403.

Wise's argument focuses on the differences between the "test room" and Matthew's room. He contends that although the test room "emulate[d] Matthew's room in all the emotional senses, [it] failed to duplicate the actual room in all the practical senses," such as ventilation, materials used to construct the walls, the use of new furniture instead of antique furniture, and the lack of insulation and roofing. These concerns would be valid if the exhibits had been offered as reconstructive evidence. *See Underly*, 605 N.E.2d at 1195 (defining reconstructive evidence as "evidence offered to recreate conditions substantially similar to those existing at the time of the issue being litigated"). However, the videotapes were admitted for demonstrative purposes only and the jury was admonished to consider them solely for that purpose. Because the exhibits explained and illustrated Lepper's testimony in a way that was potentially helpful to the jury, they were properly admitted as demonstrative evidence.

■ Wise also contends that the exhibits should have been excluded under Evidence Rule 403 because the videotape "spent a considerable amount of time showing how wonderful, warm and comfortable the room looked like, especially concentration on those decorations in the room which made it a nursery." Rule 403 mandates the exclusion of evidence when its probative value is "substantially outweighed" by the danger of unfair prejudice. Trial courts are given wide latitude in balancing these concerns, and we review their determination for an abuse of discretion. *See Ingram v. State*, 715 N.E.2d 405, 408 (Ind.1999). As explained above, the exhibits offered probative value by illustrating Lepper's testimony. The trial court was within its discretion in concluding that any danger of unfair prejudice arising out of the inclusion of stuffed animals, baby shoes, or a doll in the crib of the test room did not substantially outweigh the probative value of these exhibits.

B. *Exclusion of Evidence Regarding Other Baby Monitors*

■ A Fisher Price model 1510 baby monitor was in the Wises' home. Wise contends that the trial court erred by excluding as irrelevant evidence that other brands of baby monitors could cause fires. Relevant evidence is evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. We review a trial court's ruling as to relevance for an abuse of discretion. *See Willsey v. State*, 698 N.E.2d 784, 793 (Ind.1998) (citing *Thompson v. State*, 690 N.E.2d 224, 233 (Ind. 1997)).

Wise's argument focuses on the fire hazard potential of both baby monitors and step-down transformers used to reduce the voltage from 120 volt house current to nine volts for baby monitors. He contends that the State opened the door to this testimony when one of its witnesses testified that the transformer used with the Wises' monitor was similar to those used in other electrical devices, but that he had never seen one generate the amount of heat necessary to ignite the plastic housing of a device. The trial court permitted testimony that the transformer used with the baby monitor and other appliances could have caused a fire. It also allowed Wise to cross-examine the State's witnesses and offer his own expert testimony that the Fisher Price 1510 and the step-down transformer in Matthew's room could have caused the fire. The only limitation imposed by the trial court excluded evidence that a different make and model of baby monitor (the Gerry 602 or 603) had been known to cause fires. There was a dispute whether the Fisher Price 1510 and the Gerry 600 series had similar parts. Under these circumstances the trial court did not abuse its discretion by determining that evidence relating to other brands of baby monitors was irrelevant to the charges against Wise.

### C. *Abortion Testimony*

Wise also contends that the trial court erred in allowing testimony recounting his premarital discussions with Michelle of the possibility of an abortion. The couple ulti-mately decided to marry, she chose not to have an abortion, and Matthew was born. Wise sought to exclude this testimony through a motion in limine, but the trial court ruled it admissible, reasoning that the evidence was offered to establish motive and finding the evidence both relevant and surviving the balancing test of Evidence Rule 403.

A ruling on a motion in limine does not preserve an error for appellate review unless the party objects contemporaneously with the introduction of the evidence at trial. *See White v. State*, 687 N.E.2d 178, 179 (Ind.1997) (citing *Poulton v. State*, 666 N.E.2d 390, 393 (Ind.1996)); (Ind. Trial Rule 46). A contemporaneous objection allows the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced. *See White*, 687 N.E.2d at 179 (citing *Clausen v. State*, 622 N.E.2d 925, 927–28 (Ind.1993)). Because Wise did not object at trial to this testimony at trial, any claim of error is waived.[1]

### II. Accomplice Liability Instruction

Wise next argues that the trial court erred by instructing the jury on accomplice liability. He contends that (1) there was no evidence to support the instruction and (2) he was charged as a principal and not given notice until days before trial of the State's theory that he may have been an accomplice to his wife's actions.

---

1. Wise responds to the State's waiver argument in his reply brief by asserting that "[t]he judge made it clear what her ruling was and that the record for purposes of appeal had been preserved.... The trial attorney should be able to rely upon the representation of the trial judge that no further objections will be worthwhile." The record citations provided, however, do not support this argument. The trial court observed at a pretrial conference that abortion would likely be an issue to be discussed during voir dire, issued an order stating its pretrial ruling on the issue, and in response to an inquiry from defense counsel reiterated that its ruling was based on Evidence Rule 403 and not 404(b). The trial court did not tell defense counsel that the record was preserved for purposes of appeal or otherwise intimate that an objection at trial was unnecessary. Moreover, although we believe that this testimony was potentially prejudicial and offered little probative value, we reject Wise's claim, raised for the first time in his reply brief, that admission of this testimony was fundamental error. *See Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995) (error is "fundamental" if it is so prejudicial to the rights of the defendant that it makes a fair trial impossible).

 The accomplice liability statute provides in relevant part that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense. . . ." Ind.Code § 35–41–2–4 (1998). In Indiana there is no distinction between the responsibility of a principal and an accomplice. *See Whittle v. State,* 542 N.E.2d 981, 991 (Ind.1989), *overruled on other grounds by Scisney v. State,* 701 N.E.2d 847 (Ind.1998). Thus, one may be charged as a principal yet convicted on proof that he or she aided another in the commission of a crime. *See id.; Hoskins v. State,* 441 N.E.2d 419, 425 (Ind.1982). If there is some evidence that a second party was involved in the crime, an instruction on accomplice liability is proper. *See Dorsey v. State,* 490 N.E.2d 260, 267 (Ind.1986), *overruled on other grounds by Wright v. State,* 658 N.E.2d 563, 570 (Ind.1995); *Burdine v. State,* 477 N.E.2d 544, 547 (Ind.1985).

There is sufficient evidence of Michelle's possible involvement in the crimes to warrant an instruction on accomplice liability in this case. Wise, Michelle, and Matthew were the only people in the house on the morning of the fire. In a deposition given to an attorney for his insurance company and admitted at trial, Wise stated that shortly before the fire he went to the bathroom and then lay down on the sofa. As he was going back to sleep, Michelle came up the stairs. When asked if she woke him up or he heard her coming up the stairs, Wise replied, "[I]t startled me, you know, when she—kind of a there's somebody standing in front of me thing." In his statement to police Wise reported that Michelle had come upstairs to "make sure that Matthew had been put back to bed," but when asked if she had checked on Matthew he replied "not that I know of, no." In addition, Michelle's trial testimony placed her upstairs, on the sofa with

Wise, at about 5:00 a.m. They talked for about ten minutes, the alarm went off and both went downstairs to check the control panels. Neither went to check on seven-week-old Matthew. Moreover, after checking both control panels they noticed smoke coming from upstairs, but neither went to Matthew's room, even though Wise did go upstairs to get a cordless phone. Because the phone was inoperable, he told Michelle to go to a neighbor's house to call 911. Although she called 911, she did not mention that a person—let alone her own seven-week-old child—was trapped in the house. Finally, the State points to testimony about a conversation Wise and Michelle had with an attorney approximately a month after the fire about the possibility of recovering a million dollars from the manufacturer of the allegedly defective baby monitor. Indeed, the Wises had a civil suit pending against the manufacturer at the time of Wise's murder trial.

In sum, evidence admitted at trial established that Michelle was at least upstairs, if not in Matthew's room, ten minutes before and at the time the fire alarm sounded. Investigators testified that the fire was intentionally set. If the jury credited this testimony, they could have believed that the fire was started by either Wise or Michelle. Michelle's post-alarm conduct also raises questions about her potential involvement. There was sufficient evidence to support giving an instruction on accomplice liability. *Cf. Dorsey,* 490 N.E.2d at 267–68 (evidence that two people were seen exiting burglary victim's house and also seen in the getaway car sufficient to warrant giving instruction on accomplice liability).

 We also reject Wise's contention that the giving of this instruction offended his due process right to notice of the charges against him.[2] This Court has held

**2.** The State's desire to seek an instruction on accomplice liability was explicitly made known at a pretrial conference days before

trial at which time the trial court deferred ruling on the issue until the conclusion of evidence at trial.

that no reference to the accomplice liability statute need be included in the charging information in order for a defendant to be convicted of a crime, regardless of whether the evidence showed that he or she acted alone or with an accomplice. *See Taylor v. State,* 495 N.E.2d 710, 713 (Ind.1986); *see also Ozuna v. State,* 703 N.E.2d 1093, 1100 (Ind.Ct.App.1998) (rejecting contention that due process requires that the State give a defendant "some pretrial notice that it intended to try him as an accessory rather than as a principal").

### III. Prosecutorial Misconduct

Wise asserts that the State engaged in prosecutorial misconduct when it challenged the admissibility of photographs of a partially melted bottle of isopropyl alcohol found in his house. He argues that the fact the bottle survived the fire was important to disprove the State's theory that the fire had been started by alcohol. The bottle was eventually admitted into evidence after a proper foundation was laid.

■■■■■ A claim of prosecutorial misconduct requires a showing that there was misconduct by the prosecutor and that it had a probable persuasive effect on the jury's verdict. *Cox v. State,* 696 N.E.2d 853, 859 (Ind.1998). Wise has demonstrated neither. It is not misconduct to make a valid objection to the lack of the necessary foundation for the admissibility of an exhibit. This is true even if the exhibit was admitted into evidence without objection at an earlier trial. Moreover, because the exhibit was ultimately admitted into evidence and Wise's expert was allowed to offer his opinion that the bottle was standing upright and "nearly full of liquid" at the time of the fire, we fail to see how the State's foundational objection could have affected the jury's verdict.

### IV. Denial of Motion to Suppress

Wise argues that insurance investigators, acting in concert with the police, illegally searched his residence without a warrant. Wise unsuccessfully moved to suppress "all evidence" obtained from the search on this ground. Wise points to no evidence admitted at trial as the result of this search nor does he provide any citation to the record of any objections made at trial to the admission of evidence from this allegedly illegal search. There was apparently no evidence improperly admitted and even if there were, his failure to make a contemporaneous objection at trial results in waiver of his suppression claim. *See Goudy v. State,* 689 N.E.2d 686, 692 (Ind.1997).

■■■ Waiver notwithstanding, Wise's argument also fails on its merits. Although a governmental investigatory agency cannot do through an insurance company or other private agency what it could not do itself, *see Maciejack v. State,* 273 Ind. 408, 414, 404 N.E.2d 7, 10–11 (1980), there is no evidence here of an agreement between the police and the insurance company to have the latter perform the functions of the former. Rather, the police officers testified at the suppression hearing that they accompanied the insurance company investigators to the Wise home merely to "keep the property safe" and ensure that insurance company personnel did not compromise anything that might be needed in the police's future investigation. Moreover, although Indiana Code § 27–2–13–2 requires insurance companies, when asked in writing, to disclose information or evidence obtained through their investigation of the fire to the police, this statute does not ipso facto transform the agents of the insurance company into agents of the state subject to the warrant requirements of the state and federal constitutions. *Cf. Gajdos v. State,* 462 N.E.2d 1017, 1020–21 (Ind.1984) ("Private persons acting solely on their own and for whatever purpose may conduct a search and seizure and turn the fruits over to the authorities, and the authorities may initiate a prosecution on that evidence.") (quoting John Wesley Hall, Jr., *Search and Seizure* § 3.4 (1982)); *Maciejack,* 273 Ind. at 414, 404 N.E.2d at 10 ("The search was con-

ducted by the investigator for the insurance company, who was not a government agent. Accordingly, the illegal fruits doctrine is inapplicable.").

### V. Sufficiency of the Evidence

■■■ Wise also contends that there is insufficient evidence to support his convictions for arson and murder. Wise is correct that the State has the burden of showing the fire was from other than accidental causes and absent such a showing the fire will be presumed to be accidental. *See Ellis v. State*, 252 Ind. 472, 477, 250 N.E.2d 364, 366 (1969), *overruled on other grounds by DeVaney v. State*, 259 Ind. 483, 489–90, 288 N.E.2d 732, 736–37 (1972). The jury was properly instructed on this point and found him guilty of arson and murder.

■■■ As this Court observed in *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986), "[a]rson is almost always subject to proof only by circumstantial evidence, and ... we defer to the jury's determination that [the defendant] set the fire." As is true of any sufficiency claim, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we look only to the evidence that supports the verdict and the reasonable inferences drawn therefrom and will affirm the conviction if there is sufficient evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Collins v. State*, 464 N.E.2d 1286, 1288 (Ind.1984).

■■■ The pathologist testified that in his opinion a non-accelerated or accidental fire of fifteen to twenty minutes in duration could not have caused the type of injuries sustained by Matthew. Fire investigator Lepper also opined that the fire was intentionally set. He based his conclusion on several factors including (1) the fire burned too fast for its fuel load; (2) there was total destruction of everything in the room; (3) the floor level burning occurred under and outward from the baseboard, which was inconsistent with a fire emanating from the electrical outlet twelve to eighteen inches above the baseboard; and (4) his finding of isopropyl alcohol, an accelerant, in the carpeting of Matthew's room. Finnerman, an electrical engineer who was the assistant laboratory manager at a company that investigates the origin and causes of fires, also concluded that the fire was intentionally set. He testified that based on the floor level destruction he believed that a liquid accelerant had been poured in the room and ignited. In addition, he ruled out the brand of baby monitor used in Matthew's room and the step-down transformer that attached it to the wall as potential causes of the fire. There is sufficient evidence to support the jury's conclusion that the fire was not accidental, and that Wise was at least an accomplice if not a principal.

### VI. Prohibition Against Multiple Punishments

■■■ As a final point we consider whether Wise's conviction for arson as a Class A felony and his murder conviction are both supported by this record. Arson as a Class B felony is enhanced to a Class A felony if the fire "results in either bodily injury or serious bodily injury to any person other than a defendant." Ind.Code § 35–43–1–1(a) (1998). Accordingly, the jury was instructed that to convict Wise of arson as a Class A felony the State must prove beyond a reasonable doubt that Wise knowingly started a fire that "resulted in serious bodily injury to Matthew D. Wise; that is: mortal carbon monoxide poisoning and burns." The trial court recognized the then unclear state of the law on this issue, and elected to sustain convictions for both murder and arson as a Class A felony.[3] As this Court recently held in

---

3. The trial court relied on this Court's opinion in *Games v. State*, 684 N.E.2d 466 (1997), *reh'g granted in part*, 690 N.E.2d 211 (1997), *cert. denied*, — U.S. —, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), which evaluated a double jeopardy claim using the "same elements"

*Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999), dual convictions cannot stand if a defendant "demonstrate[s] a reasonable possibility that the evidentiary facts used by the fact-finder to establish elements of one offense may also have been used to establish the essential elements of a second challenged offense." Here, the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of arson as a Class A felony, and the two cannot stand. *Cf. Chapman v. State,* 719 N.E.2d 1232, 1234 (Ind.1999). Accordingly, we remand this case to the trial court to reduce Wise's arson conviction to a Class B felony and impose a sentence of twenty years imprisonment on that count.[4]

### Conclusion

William Wise's conviction for murder is affirmed. This case is remanded to the trial court with instructions to reduce his conviction for arson as a Class A felony to a Class B felony and impose a twenty-year sentence on that count to run consecutive to the sixty-year sentence for murder.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

---

test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The trial court observed that "the factual analysis previously required by the Indiana Supreme Court is not required in this case, other than to look at the elements of the two crimes, and there are elements contained in each crime that the other does not contain." It concluded that the Indiana Constitution provides no greater protection against multiple punishments than the federal constitutional protection embodied in *Blockburger.* This view was quite reasonable under our decisions at the time, but requires revision in light of *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999).

4. The trial court sentenced Wise to maximum and consecutive terms for the two counts. It also "state[d] for the record, if I'm wrong on the effect of *Games* ... [and the arson count] is reduced to a B [felony] by a higher Court, I think the maximum sentence on that would be appropriate as well." In light of this statement, there is no reason to remand this case for a new sentencing hearing.