

FILED

Nov 27 2019, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ernest Ray Snow, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 27, 2019 <br><br> Court of Appeals Case No. 19A-CR-949 <br><br> Appeal from the Hendricks Circuit Court <br><br> The Honorable Dan F. Zielinski, Judge <br><br> Trial Court Cause No. 32C01-1705-F5-80 |

**Najam, Judge.**

## Statement of the Case

[1] Ernest Ray Snow, Jr. appeals his convictions following a jury trial for burglary, as a Level 5 felony; theft, as a Level 5 felony; conversion, as a Level 5 felony; and auto theft, as a Level 6 felony; and his sentence enhancements for

committing a felony while a member of a criminal organization and for being a habitual offender. Snow presents three issues for our review:

1.   Whether the trial court erred when it admitted evidence that law enforcement officers had seized pursuant to a search of his residence.

2.   Whether the State presented sufficient evidence to support his convictions.

3.   Whether the criminal organization enhancement violates the prohibition against double jeopardy.

We also address *sua sponte* whether the trial court's judgment of conviction and sentencing order erroneously lists Snow's convictions.

We affirm and remand with instructions.

## Facts and Procedural History

On May 6, 2017, a friend of Snow's introduced him to Robert Fields, a forklift operator at Ingram Micro, a company that distributes mobile devices, including Fitbits and Fitbit accessories. Snow drove a gold-colored Ford F350 truck that day. Fields was interested in buying shoes from Snow, so they exchanged phone numbers. Early the next morning, Snow called Fields, and he told Fields that he would give Fields ten pairs of shoes in exchange for information about security at an Ingram Micro warehouse. Fields described the two "older" people who provided security for the warehouse, and Fields told Snow the

"trailer number" for a trailer loaded with Fitbits parked outside the warehouse. Tr. Vol. 2 at 234.

[5] During the early morning hours of May 8, a semi-tractor was stolen from a facility in Plainfield, and that semi-tractor was used to steal the trailer full of Fitbits from Ingram Micro. When Scott Sunderman, an Ingram Micro security manager, learned of the missing trailer, he notified some "off-duty" officers with the Plainfield Police Department, and Sunderman "headed around town" to investigate himself. *Id.* at 141. The trailer was equipped with a GPS tracking device, and the company that owned the trailer accessed the data for that device, which showed that the trailer had been parked at 3524 Shadeland Avenue between 2:30 and 5:15 a.m. on May 8. The trailer was ultimately found abandoned and empty, and someone had disabled the GPS tracking device.

[6] The next morning, Sunderman drove to the area of 3524 Shadeland Avenue, and he obtained a nearby hotel's exterior surveillance video showing the semi-tractor driving the trailer full of Fitbits to that address, where several businesses are located. After watching the video, Sunderman notified law enforcement about the possible location where the Fitbits had been unloaded. And Sunderman decided to "continue to sit on the location." *Id.* at 146. Dan Marshall, the director of security for Ingram Micro, joined Sunderman.

[7] At some point, Sunderman and Marshall saw a man arrive at 3524 Shadeland Avenue in a "gold F350 pickup" truck. *Id.* The man was making several trips

between the truck and a business at that address, Caldwell Automotive, carrying boxes that looked like the ones containing the Fitbits from Ingram Micro. Plainfield police officers then obtained a search warrant for Caldwell Automotive. During their subsequent search of the premises, officers found multiple boxes containing Fitbits and Fitbit accessories. Officers also talked to Gregory Street, who leases the premises immediately adjacent to Caldwell Automotive. Street provided the officers with surveillance footage of the exterior of the building from the morning of May 8. That footage showed people moving boxes from the parked trailer into Caldwell Automotive. Street recognized one of the men on the footage as one of his employees, Randy Price. Plainfield Police Department Detective Brian Bugler interviewed Price, who stated that a man named "Snow" had organized the heist and was one of the three to five men who had moved the boxes from the trailer into Caldwell Automotive. Appellant's App. Vol. 2 at 34.

[8] After additional investigation by law enforcement implicated Snow in the theft of the Fitbits from Ingram Micro, officers obtained a search warrant for Snow's residence. When officers executed that warrant, they found seven Fitbits and Fitbit accessories. The Fitbits were identified as having been stolen from Ingram Micro. Officers also obtained warrants to search Snow's cell phone, and they read text messages implicating Snow in the heist.

[9]     The State charged Snow with burglary, as a Level 5 felony; theft, as a Level 5 felony; conversion, as a Level 5 felony; and auto theft, as a Level 6 felony.[1] The State also alleged that Snow committed these offenses while he was a member of a criminal organization and that he was a habitual offender. The trial court held a trifurcated trial, and the jury found Snow guilty as charged at the conclusion of each phase.

[10]     In its judgment of conviction and sentencing order, the trial court erroneously entered judgment on two counts of burglary, as Level 5 felonies; theft, as a Level 5 felony; and conversion, as a Level 5 felony. The trial court did not enter judgment of conviction on the auto theft count. And the trial court sentenced Snow as follows: concurrent five-year sentences for the two burglary convictions and the theft conviction; a two-year sentence for conversion, to be served consecutive to the other counts; five years for the criminal organization enhancement; and two years for the habitual offender enhancement. Thus, Snow's aggregate sentence is fourteen years executed. This appeal ensued.

# Discussion and Decision

## *Issue One:  Search Warrant*

[11]     Snow contends that the trial court erred when it admitted evidence seized by law enforcement officers during the search of his residence. Snow's argument that the search of his residence violated his constitutional rights raises

---

[1]  The State had charged Snow with three additional offenses, but it dismissed those charges prior to trial.

"questions of law that we review *de novo*." *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (quotation marks omitted), *trans. denied*.

[12] On appeal, Snow maintains that the search of his residence was illegal because the search warrant lacked probable cause. We cannot agree. Rather, we conclude that the evidence supports the trial court's determination that sufficient probable cause supported the search warrant. In any event, even if we assume for the sake of argument that Snow is correct and there was no probable cause to support the search warrant, "[t]he lack of probable cause does not automatically require the suppression of evidence obtained during a search conducted pursuant to a warrant." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009). Indeed, "the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith." *Id.*

[13] Accordingly, to establish reversible error, Snow must demonstrate *both* the lack of probable cause *and* the inapplicability of the good faith exception. But, in his appellant's brief, Snow only asserts that the search warrant lacked probable cause. He makes no argument that the good faith exception does not apply. And his attempt to make an argument on the good faith exception for the first time in his reply brief is unavailing. "The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005).

There are two situations where the good faith exception does not apply. *Jackson*, 908 N.E.2d at 1143. Those include situations where "the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" or situations where "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation marks omitted).

As Snow has not addressed good faith in his lead brief on appeal, he has not directed us to any evidence in the record, or made any argument, that the magistrate was misled by information in the affidavit that Detective Bugler knew or should have known was false. *See* Ind. Appellate Rule 46(A)(8)(a). Neither does he assert that the warrant was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. *See id.* And it is not this Court's place to make arguments for a party on appeal. *See Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003). Accordingly, Snow has not met his burden on appeal to demonstrate that the trial court erred when it admitted as evidence items seized pursuant to the search of his residence.

## *Issue Two:  Sufficiency of the Evidence*

[16]   Snow next contends that the State presented insufficient evidence to support his convictions.[2]  Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence.  *Id.*  We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[17]   To prove that Snow committed burglary, as a Level 5 felony, the State was required to show that he broke and entered the building or structure of another person, with the intent to commit a felony or theft in it.  Ind. Code § 35-43-2-1 (2019).  To prove that Snow committed theft, as a Level 5 felony, the State was required to show that he knowingly or intentionally exerted unauthorized control over the property of another person with the intent to deprive the other person of any part of its value or use and that the property's value was at least $50,000.  I.C. § 35-43-4-2(a)(2)(A).  To prove that Snow committed conversion, as a Level 5 felony, the State was required to show that he knowingly or

---

[2]  The parties address Snow's convictions as found by the jury, not as listed in the judgment of conviction. As we explain below, we remand to the trial court to correct the erroneous judgment of conviction and sentencing order accordingly.

intentionally exerted unauthorized control over another person's motor vehicle. I.C. § 35-43-4-3. To prove that Snow committed auto theft, a Level 6 felony, the State was required to show that he knowingly or intentionally exerted unauthorized control over the motor vehicle of another person with the intent to deprive the other person of the vehicle's value or use. I.C. § 35-43-4-2.5(b) (2017). Finally, the State alleged that Snow committed each of these offenses as an accomplice. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense. I.C. § 35-41-2-4.

[18] Snow's sole contention on appeal is that the State presented insufficient evidence to prove his guilt as an accomplice "because the identity of the individuals who committed the burglary, thefts, and conversion is completely unknown." Appellant's Br. at 13. In support of that contention, Snow maintains that none of the four factors relevant to accomplice liability is satisfied here. We cannot agree.

[19] As our Supreme Court has explained,

> [a] defendant may be charged as the principal but convicted as an accomplice. *Jester v. State*, 724 N.E.2d 235, 241 (Ind. 2000); *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). Generally there is no distinction between the criminal liability of an accomplice and a principal, *Wise*, 719 N.E.2d at 1198, although evidence that the defendant participated in every element of the underlying offense

is not necessary to convict a defendant as an accomplice. *Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001). . . . We consider four factors to determine whether a defendant acted as an accomplice: (1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime. *Id.* at 352. That a defendant was present during the commission of a crime and failed to oppose the crime is not sufficient to convict [him]. *Id.* But, "presence at and acquiescence to a crime, along with other facts and circumstances" may be considered. *Id.* at 352-53.

*Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). Further, as this Court has explained,

[t]he particular facts and circumstances of each case must be considered in determining whether a person participated in the commission of an offense as an accomplice." *Peterson v. State*, 699 N.E.2d 701, 706 (Ind. Ct. App. 1998). For [a defendant's] conviction to stand, "there must be evidence of [his] affirmative conduct, either in the form of acts or words, from which an inference of a common design or purpose to effect the commission of a crime may be reasonably drawn." *Id.* "Each participant must knowingly or intentionally associate himself with the criminal venture, participate in it, and try to make it succeed." *Cohen v. State*, 714 N.E.2d 1168, 1177 (Ind. Ct. App. 1999), *trans. denied*. That said, the State need not show that [the defendant] "was a party to a preconceived scheme; it must merely demonstrate concerted action or participation in an illegal act." *Rainey v. State*, 572 N.E.2d 517, 518 (Ind. Ct. App. 1991).

*Griffin v. State*, 16 N.E.3d 997, 1003-04 (Ind. Ct. App. 2014).

The State presented ample circumstantial evidence to prove that Snow was involved in every step of the heist—from the planning to the execution. In particular, prior to the heist, Snow asked Fields for information about security at Ingram Micro, and he asked Fields for identifying information on the trailer containing the Fitbits. Snow sent text messages to someone offering to pay $15,000 for that person to drive a semi-truck from one side of Indianapolis to the other. And when the trailer containing the stolen Fitbits was stolen, someone transported it from the west side to the east side of Indianapolis. Before, during, and after the heist, Snow was in close contact by phone with Caldwell, who owned the business where the Fitbits were unloaded from the trailer. After the heist, someone driving the same pickup truck Snow had driven to Ingram Micro prior to the heist parked that truck outside of Caldwell's business and transported multiple boxes from Caldwell's to the truck. And officers found some of the stolen Fitbits inside Snow's residence.

Snow's contentions on appeal amount to a request that we reweigh the evidence and assess witnesses' credibility, which we cannot do. We hold that the State presented sufficient evidence to prove that Snow was liable as an accomplice for each of his convictions: burglary, as a Level 5 felony; theft, as a Level 5 felony; conversion, as a Level 5 felony; and auto theft, as a Level 6 felony.

### Issue Three: Criminal Organization Enhancement

Finally, Snow contends that the criminal organization enhancement "violates both Snow's right to be free from double jeopardy [under the Indiana Constitution] and the common law prohibition of enhancing a sentence using

the very same behavior used to support the underlying conviction." Appellant's Br. at 14. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." As we have explained,

> [o]ur Supreme Court has interpreted that clause to prohibit multiple convictions based on the same "actual evidence used to convict." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). To determine the actual evidence used to establish a conviction, we look to the "evidentiary facts" as they relate to "all" of the elements of both offenses. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). In other words, the actual evidence test requires "the evidentiary footprint for all the elements required to prove one offense" to be "the same evidentiary footprint as that required to prove all the elements of another offense." *Thrash v. State*, 88 N.E.3d 198, 208 (Ind. Ct. App. 2017) (quoting *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015)).

*Bradley v. State*, 113 N.E.3d 742, 751 (Ind. Ct. App. 2018), *trans. denied*.

[23] The State charged Snow as follows:

> Ernest Snow was knowingly a member of a criminal organization while committing any of his charged offenses and committed the felony offense at [the] direction or in affiliation with a criminal gang or with the intent to benefit, promote, or further the interest of a criminal organization or for the purposes of increasing the person's own standing or position with the criminal organization.

Tr. Vol. 3 at 159; *see* I.C. § 35-50-2-15. Indiana Code Section 35-45-9-1 defines "criminal organization" in relevant part as a formal or informal group with at

least three members that either assists in or participates in or has as one of its goals the commission of a felony.

[24] Here, during the criminal organization enhancement phase of Snow's trial, the State did not present additional evidence. Instead, the State told the jury that it was "incorporating all of the evidence that [the jury] heard presented in the first phase of the trial and we're going to rely on that evidence." *Id.* at 163. And during closing argument, the prosecutor stated:

> In this case there is ample evidence that the State has proved this enhancement beyond a reasonable doubt. If you recall, the video that was played to you in the cab was an individual who came in and cut . . . the GPS [in the semi-truck], cut the video. Individual number one. Individual number two is an individual [who] testified to you of his involvement, Mr. Fields. Individual number three is their co-defendant sitting here in the courtroom. That's number three and there's many other people that had involvement in this case. Randy Price, you heard his name, didn't you? So, the State of Indiana is going to ask you to rely on that, rely on the fact that the evidence beyond a reasonable doubt demonstrates that both Defendant Caldwell and Defendant Snow acted in concert with at least three people, thereby constituting a criminal organization.

*Id.* at 168. The prosecutor concluded his argument by stating that Snow was knowingly a member of a criminal organization when he committed the burglary "[w]ith the intent to promote or further the interest of the criminal organization." *Id.* at 169.

On appeal, Snow avers that "this Court is not required to speculate about what evidence guided the jury's guilty verdict on the criminal organization enhancement. The Court can be sure that the jury used the very same evidence used to support the underlying felonies." Appellant's Br. at 16. Thus, Snow concludes, "the criminal organization enhancement violated [his] right to be free from double jeopardy under the Indiana Constitution." *Id.* But Snow's argument is silent regarding whether the evidentiary footprint for *all* the elements required to prove the enhancement is the same evidentiary footprint as that required to prove *all* the elements of burglary or any of the other underlying felonies. *See Bradley*, 113 N.E.3d at 751. Indeed, in his argument, Snow does not set out the elements for either the enhancement or any underlying felony. Accordingly, Snow has not sustained his burden on appeal to show that the criminal organization enhancement violates the actual evidence test under Article 1, Section 14.

[26] Still, Snow asserts that, because "the State itself has argued that it used the same behavior to convict and enhance," the enhancement cannot stand under common law principles. Appellant's Br. at 16. As we explained in *Bradley*,

> the Indiana Supreme Court has also "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy[ ] but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quotation marks omitted).

113 N.E.3d at 751. As Snow points out, one such rule "'prohibit[s] conviction and punishment for an enhancement of a crime where the enhancement is

imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Cross v. State*, 15 N.E.3d 569, 571 (Ind. 2014) (quoting *Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003); emphasis omitted).

[27] However, as our Supreme Court has explained, "[a] criminal gang enhancement . . . is fundamentally related to its underlying felony or felonies. The enhancement increases punishment based on the manner in which the defendant committed the underlying felony or felonies." *Jackson v. State*, 105 N.E.3d 1081, 1086 (Ind. 2018). Here, the State presented evidence that Snow committed four felonies. In addition, the State presented evidence that Snow committed one or more of those felonies in concert with at least two other people with the intent to promote or further the interests of the criminal organization. The underlying felonies are the foundation for the enhancement, but it is the manner in which Snow committed those felonies, namely, acting in concert with at least two other people to further their organization's interests, that supports the enhancement. Thus, the enhancement was not imposed for the "very same behavior or harm" as the underlying felonies. *See Cross*, 15 N.E.3d at 571. We reject Snow's contention on this issue.

## *Conclusion*

[28] On appeal, both Snow and the State describe Snow's convictions as follows: burglary, as a Level 5 felony; theft, as a Level 5 felony; conversion, as a Level 5 felony; auto theft, as a Level 6 felony; criminal organization enhancement; and habitual offender enhancement. Given the discrepancy between the parties'

understanding of the convictions, which is consistent with the jury verdicts, and the trial court's judgment of conviction and sentencing order, we remand with instructions to vacate one of the burglary convictions listed on the judgment of conviction and sentencing order and to enter judgment of conviction as follows: burglary, as a Level 5 felony; theft, as a Level 5 felony; conversion, as a Level 5 felony; auto theft, as a Level 6 felony; criminal organization enhancement; and habitual offender enhancement. And the trial court shall resentence Snow accordingly.

[29] The trial court did not err when it admitted evidence seized by officers during a search of Snow's residence. The State presented sufficient evidence to support Snow's convictions. And Snow's contentions regarding the criminal organization enhancement are without merit. We affirm Snow's convictions, but we remand with instructions to enter judgment of conviction consistent with the jury's verdicts and to resentence Snow accordingly.

[30] Affirmed and remanded.

Bailey, J., and May, J., concur.