

IN THE

# Court of Appeals of Indiana



FILED

Aug 11 2025, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Davon Nathaniel Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 11, 2025

Court of Appeals Case No.
24A-CR-2588

Appeal from the
Lake Superior Court

The Honorable
Natalie Bokota, Judge

Trial Court Cause No.
45G02-2207-MR-24

**Crone, Senior Judge.**

## Statement of the Case

[1] A jury determined Davon Nathaniel Jones robbed Amarion Holmes and fatally shot him. Jones appeals his convictions of murder and armed robbery. He argues the trial court erred by admitting certain evidence and by instructing the jury on accomplice liability. Concluding the trial court did not err, we affirm.

## Facts and Procedural History

[2] On April 9, 2022, Jones and a friend named Jay used Facebook's messaging app to chat. Jones was at his home in Hammond, Indiana. Jones and Jay used slang terms to discuss robbing people. They also discussed firearms and shared photos of handguns.

[3] At 3:19 p.m., Jones, using an alias, contacted Amarion Holmes through the same messaging app. Holmes sold marijuana, and Jones asked Holmes, still using slang terms, if he could buy some. As they negotiated the amount, price, and location of the sale, Jones separately messaged Jay to tell him he "got stain[sic][.]" Tr. Ex. Vol., p. 161. "Stain" is a slang term for robbery.

[4] Holmes agreed to drive to Hammond from a nearby town, saying he was twenty-five minutes away. He drove a white Hyundai sedan. Jones directed

Holmes to meet him at 817 Drackert Street. Holmes and Jay both lived separately in the neighborhood, several blocks from that address.

[5] During this time, Jones and Jay continued chatting. Jones reacted with a laugh emoji to this statement: "25 min [sic] drive just to get took [sic][.]" *Id.* at 163. Jones also emphasized this statement: "Imma [sic] warn yu [sic] now if he don't give it up Imma [sic] do what I gotta do[.]" *Id.*

[6] Andrea Varela lived in a house at 817 Drackert Street, having moved in several months before April 9. On that day, she was sitting on her front porch with her brother, Luis Varela. They both saw a white car drive up and park in front of her house for several minutes.

[7] At 4:21 p.m., Holmes sent Jones a message stating he was outside. At 4:24, Jones messaged Holmes, telling him to "slide it in the back my neighbors be snitching[.]" *Id.* at 99. Holmes agreed.

[8] Andrea and Luis watched the white car drive off. Luis saw it turn in the direction of the alley behind the house. Next, Holmes messaged Jones, saying "I'm here[.]" *Id.*

[9] Fifteen to thirty seconds after the car drove off, Andrea and Luis heard a gunshot from the alley. Andrea went inside to ensure her back door was locked. Next, Andrea and Luis looked out a window and saw a man walking quickly along the side of the house, leaving the back yard and heading toward the street. He was wearing all black clothing and a black ski mask. The man

turned toward Andrea, and they made eye contact. Luis noted the man's hoodie had a Nike logo. After he left, Andrea went into the backyard to secure her gate to the alley. She saw the white car that had been parked briefly in front of her house.

[10] At around 4:30, Jones unfriended Holmes' Facebook account. At the same time, police officers and paramedics were dispatched to the alley behind 817 Drackert to investigate several reports of shots fired. They found Holmes in his white Hyundai, slumped down in the driver's seat, with a wound on the left side of his head. The car was still in drive, and his foot was on the brake.

[11] Paramedics removed Holmes from the car. As they took him to the ambulance, an officer saw an empty handgun holster tucked inside the waistband of his pants. In addition, paramedics discovered a shell casing in Holmes' clothing and gave it to an officer. Holmes did not have a wallet or identification card. He was later pronounced dead at a hospital.

[12] Back at the scene of the shooting, officers discovered another shell casing on the ground near the car. Inside the car, they found Holmes' phone but no firearms or controlled substances. The officers also noticed a hole in the inside of the front passenger door. During a later, more detailed search of the car at another location, officers found a spent round inside the front passenger door.

[13] Meanwhile, Jones left Indiana for Wisconsin, where his mother lived. He did not use his phone for twenty-four hours, which was a departure from his

previous pattern of frequently using his phone throughout the day. Jones later returned to Hammond.

[14] A forensic pathologist determined Holmes had been shot three times: once in the left side of his head, exiting on the right side; once on the left side of his face, with a spent round recovered from inside his head; and once in his left shoulder, exiting his left arm. Testing revealed the spent rounds recovered from Holmes' body and the car door had been fired from the same gun, and the shell casings recovered from Holmes' clothing and from the ground near his car were also fired from the same gun.

[15] On July 19, 2022, several Hammond police officers stopped Jones' car and arrested him. They found his phone in one of his pockets. Subsequent examination of the calling and messaging history of Jones' phone revealed that it had been near the site of the shooting when it occurred.

[16] Officers also searched Jones' home. They found a black face mask in his bedroom and black sweat pants in the laundry area.

[17] Further investigation revealed that on June 15, 2021, Officer Daniel Percak of the Hammond Police Department had encountered Jones sitting in a car outside of 817 Drackert Street. Jones told the officer he was visiting a friend. The friend exited the house and spoke with the officer. Officer Percak was wearing a body camera, which recorded the encounter.

[18] In August 2022, the State charged Jones with felony murder (killing Holmes while committing robbery); murder, a felony; Level 2 felony robbery resulting in serious bodily injury; Level 3 felony armed robbery; and Level 5 felony robbery. The State further alleged Jones was eligible for a firearm sentencing enhancement.

[19] On July 8, 2024, officers showed Andrea a photo of Jones wearing all black clothing, but with his face exposed. She said Jones was the person who had walked through her yard shortly after she heard the gunshot. The officers also showed the photo to Luis, and he said Jones' outfit was identical to the clothes that had been worn by the person who walked by Andrea's house, including the Nike logo.

[20] At trial, Officer Percak testified about his June 2021 encounter with Jones, and the trial court admitted into evidence a still photograph of Jones that had been taken from the officer's body camera recordings. After the State rested its case, the prosecutor asked the court to instruct the jury on accomplice liability. The court granted that request, over Jones' objection.

[21] The jury determined Jones was guilty of murder and all three robbery charges. The jurors could not reach a verdict on the felony murder charge and the firearm sentencing enhancement.

[22] At sentencing, the trial court entered a judgment of conviction for the murder charge and the Level 3 felony robbery charge. The court sentenced Jones on those two convictions, and this appeal followed.

## Discussion and Decision

## I. Admission of Evidence – Evidence of Other Acts and Statements

[23] Jones argues the trial court should not have admitted evidence related to his June 2021 encounter with Officer Percak at 817 Drackert or his chat history with Jay on the day of the murder about handguns and committing robberies. He claims the evidence was unfairly prejudicial, and the prejudice outweighed any probative value.

[24] "The admission and exclusion of evidence rests within the sound discretion of the trial court." *Carr v. State*, 255 N.E.3d 519, 526 (Ind. Ct. App. 2025), *trans. denied*. "We reverse only where the decision is clearly against the logic and effect of the facts and circumstances." *Redding v. State*, 244 N.E.3d 477, 484 (Ind. Ct. App. 2024).

[25] In criminal cases, it is a longstanding principle that "'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997) (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)). As a result, Indiana Evidence Rule 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But evidence of a prior crime, wrong, or other act may be admissible to prove a purpose other than propensity to commit present misconduct, such as "motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. Rule 404(b)(2).

[26] The State argues that none of the evidence Jones challenges here qualifies as evidence of another crime, wrong, or other act for purposes of Rule 404(b). We agree as to the evidence about Jones' June, 2021 encounter with Officer Percak at 817 Drackert. The State told the trial court, outside the jury's presence, that the officer was investigating a crime and thought Jones might be a suspect, but the jury was not given that information. Instead, the jury heard only that Officer Percak encountered Jones at a specific location and saw a picture of Jones. And the State alleged that the interaction between Jones and the officer was relevant to show only that Jones was familiar with that house and the area. As a result, admission of evidence related to the encounter did not violate Rule 404(b)(1) because it did not indicate uncharged misconduct. *See, e.g., Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008) (possession of knife did not constitute prior bad act under Rule 404(b) because mere possession of knife did not demonstrate criminal or wrongful behavior), *trans. denied*.

[27] Turning to Jay and Jones' chat history about handguns and planning robberies, we cannot conclude that the history is evidence of other or prior misconduct under Rule 404(b). Instead, the evidence was relevant to the charged offenses. The chat history showed Jones was familiar with handguns and had lured Holmes to Hammond under the guise of a marijuana transaction to ambush him. The chat record did not suggest a prior, uncharged offense. *See Anderson v. State*, 15 N.E.3d 147, 149 (Ind. Ct. App. 2014) (defendant on home arrest and

convicted of escape claimed trial court should not have admitted evidence showing he was outside of residence earlier in day; Court concluded prior movements were not prior bad act but relevant to charged act of escape). The trial court did not abuse its discretion in admitting this evidence.

## II. Jury Instructions – Accomplice Liability

[28] Jones argues the trial court should not have granted the State's request to instruct the jury on accomplice liability. We review a trial court's jury instruction decisions for an abuse of discretion. *Albert v. State*, 193 N.E.3d 1040, 1042 (Ind. Ct. App. 2022), *trans. denied*. "When reviewing the trial court's decision, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions." *Vaughn v. State*, 13 N.E.3d 873, 884 (Ind. Ct. App. 2014), *trans. denied*.

[29] Jones' claim focuses on the second element of the test: he contends there was insufficient evidence that he acted as an accomplice or had an accomplice when he committed his offenses, and as a result, the two jury instructions on accomplice liability were unnecessary. We disagree. The General Assembly has defined accomplice liability as follows:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
>
> (1) has not been prosecuted for the offense;
>
> (2) has not been convicted of the offense; or

(3) has been acquitted of the offense.

Ind. Code § 35-41-2-4 (1977). "In Indiana, there is no distinction between the responsibility of a principal and an accomplice." *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). "If there is some evidence that a second party was involved in the crime, an instruction on accomplice liability is proper." *Id.*

[30]     Jones's chat history with Jay on the day of Holmes' murder indicates that Jay, who also lived near the location of the murder, was involved in planning the robbery and may have taken part. Jones reacted with a laugh emoji to the following message: "25 min [sic] drive just to get took [sic][.]" Tr. Ex. Vol., p. 163. Jones also reacted to this message: "Imma [sic] warn yu [sic] now if he don't give it up Imma [sic] do what I gotta do[.]" *Id.* This is sufficient evidence to establish that a second person could have been involved in the crime and supports the trial court's instructions on accomplice liability. *See Wise*, 719 N.E.2d at 1198 (record supported instructing jury on accomplice liability; there was evidence that wife may have helped husband set house fire). The trial court did not abuse its instructional discretion.

## Conclusion

[31]     For the reasons stated above, we affirm the judgment of the trial court.

[32]     Affirmed.


Altice, C.J., and Bailey, J., concur.

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Office of the Lake County Public Defender
Crown Point, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Andrew M. Sweet
Deputy Attorney General
Indianapolis, Indiana